624 A.2d 1238

**MARYLAND STATE POLICE et al.**

v.

**WARWICK SUPPLY & EQUIPMENT CO., INC.**

No. 117, Sept. Term, 1992.

Court of Appeals of Maryland.

May 10, 1993.

Reconsideration Denied June 23, 1993.

Jeffrey H. Myers, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellant.

Robin John Pecora, on brief, Baltimore, for appellee.

Glenn E. Bushel and Brocato, Price & Bushel, Baltimore, for Dick Enterprises, Inc.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

This case arises out of a contract to remove and replace certain concrete sidewalks at the Maryland State Police Headquarters located at Pikesville in Baltimore County. Following the completion of the project, Warwick Supply & Equipment Company, Inc. ("Warwick") filed an appeal to the Maryland State Board of Contract Appeals ("MSBCA") on April 22, 1991 against both the Department of General Services and the Maryland State Police (the "State"). In its appeal, Warwick alleged that it was owed additional money for extra work it was required to perform under its contract. The State moved to dismiss the appeal on the ground that it was not timely filed. Agreeing with the State's position, the MSBCA granted the State's motion and dismissed Warwick's appeal. Feeling aggrieved, Warwick sought judicial review by the Circuit Court for Baltimore City, which reversed the decision of the MSBCA and remanded the case for a hearing on its merits by the MSBCA.

After the State noted an appeal to the Court of Special Appeals, we issued our writ of certiorari prior to consideration of the case by the intermediate appellate court.

## I.

Warwick and the State entered into the contract on November 27, 1989. After completion of the project, Warwick sent a letter dated June 18, 1990 to the Maryland State Police. This letter stated that "the Maryland State Police grossly understated the bid quantity" of concrete and requested an "equitable adjustment as a change order to [the] contract." After the State received Warwick's letter of June 18, 1990, several telephone conversations occurred between agents of the State and Warwick in which agents of the State acknowledged their receipt of the letter on June 22, 1990. Other than the telephone conversations, no action was taken by either party until Warwick filed its appeal to the MSBCA on April 22, 1991.

The State moved to dismiss Warwick's appeal to the MSBCA, alleging that Warwick's appeal was untimely in light of the regulations promulgated by the Board of Public Works which govern appeals to the MSBCA. COMAR 21.10.04.04E provides:

"E. Construction Contracts.

"(1) The contractor shall be notified in writing of the reviewing authority's decision within 180 days of receipt of the claim by the procurement officer or within such enlarged period as may be agreed upon by the contractor. The requirement for notification is satisfied upon mailing of the decision within the 180–day period or the enlarged period.

"(2) Failure to reach a decision within the time prescribed in § E(1) shall be considered a decision to deny the claim that may be appealed in accordance with COMAR 21.10.04.06."

COMAR 21.10.04.06 provides in relevant part:

"A. An appeal to the [MSBCA] shall be mailed or otherwise filed within 30 days of the receipt of notice of

the final decision. The notice shall indicate that an appeal is intended, shall reference the decision from which the appeal is being taken, and shall identify the contract involved.

"B. An appeal based upon a failure to reach a decision within the period prescribed in COMAR 21.10.04.04E shall be filed within 30 days of the expiration of the prescribed period."

A "claim" is defined as "a complaint by a contractor ... relating to a contract," COMAR 21.10.04.01B(1), and "reviewing authority" means "the agency head or designee," COMAR 21.10.04.01(2)(b).

A hearing on the State's motion to dismiss was held before the MSBCA on July 30, 1991. The President of Warwick, Brigid T. Wist, was the only witness to testify at the hearing.[1] Reiterating statements which she had set forth in an affidavit submitted in opposition to the State's motion to dismiss, Wist testified that she submitted a claim letter to Milton Johnson of the Maryland State Police, that she made numerous phone calls to settle the claim, and that she was repeatedly "put off" and given the "run around." The MSBCA issued a written decision with the following findings of fact:

"1. [Warwick] requested an equitable adjustment by letter dated June 18, 1990 in which it outlined its claim.

---

1. Accompanying the State's motion to dismiss were affidavits of two employees of the Maryland State Police, Milton Johnson and William S. Ebare. Johnson's affidavit declared that he received Warwick's letter of June 18, 1990 on June 22, 1990, that he passed the letter on to Ebare, who was the Commander of Capital Improvements for the Maryland State Police, that he had reported this to an agent of Warwick in a telephone conversation during the week of July 11, 1990, and that he had not communicated with Warwick since then. Ebare's affidavit declared that he received the letter from Johnson, that he received a telephone call from Brigid Wist of Warwick in September or October of 1990, that he told Wist in that conversation that he would determine what action would be taken, that subsequently he concluded Warwick's claim was without merit, but that he failed to notify Warwick of that decision.

"2. [The State's] Procurement Officer received the letter of June 18, 1991 [sic] on June 22, 1991 [sic].

"3. [Warwick] contacted [the State] by phone in September and October of 1991 [sic] concerning the claim letter. [The State] made no specific remarks but said it would examine what, if any, action would be taken, and did not give any definite time for a final decision.

"4. [Warwick's] witness Ms. Bridget [sic] Wist testified that no agreement was ever made to enlarge the 180 day period for the procurement officer to issue a written decision. Her undisputed testimony was she was repeatedly "put off". She further testified that she did not demand a date certain for a decision on the claim.

"5. The parties agree that 180 days from June 22, 1990 would fall on December 19, 1990. Under that time table January 18, 1991 is the last day for filing a timely appeal to this Board.

"6. Appeal to this Board was filed [on] April 22, 1991."

The MSBCA dismissed Warwick's appeal reasoning that under COMAR 21.10.04.04E, if a contractor's claim is not acted upon by the procurement officer within 180 days of receipt, that inaction becomes a final decision which must be appealed by the contractor within 30 days to the MSBCA, and that Warwick failed to do so in this case.

Warwick filed an action in the circuit court for Baltimore City for judicial review of the MSBCA's decision. In the circuit court, Warwick argued that there was no statutory authority for the regulations that were relied on by the MSBCA in ruling Warwick's appeal was untimely, and therefore, the regulations were overbroad and violated the constitutional requirement of separation of powers. Warwick also argued that Maryland's courts should interpret this State's procurement law as being *in pari materia* with federal procurement law. Warwick asserted that under federal case law the time limitations for filing an appeal by a contractor who has not received a written decision by the contracting officer are not mandatory, but rather, are permissive.

The circuit court reversed the MSBCA's decision dismissing Warwick's appeal and remanded the case for a hearing on the merits by the MSBCA. The circuit court made two separate rulings. First, the court ruled that COMAR 21.-10.04.06B was unreasonably overbroad and not authorized by the General Assembly, thereby violating the separation of powers required by the Maryland Declaration of Rights. Second, the court ruled that, because Warwick's President, Ms. Wist, "was repeatedly 'put off,'" Warwick's request for an equitable adjustment remained under active consideration, and therefore, was impliedly never denied.

## II.

The delegation doctrine prohibits a legislative body from delegating its law-making function to any other branch of government or entity and is a corollary of the separation of powers doctrine implicit in the United States Constitution and expressly provided in the Maryland Constitution.[2] *Department of Transp. v. Armacost*, 311 Md. 64, 77, 532 A.2d 1056, 1062 (1987). Nonetheless, we have long sanctioned delegations of legislative power to administrative officials where sufficient safeguards are legislatively provided for the guidance of the agency in its administration of the statute. *Insurance Comm'r v. Bankers Indep. Ins. Co.*, 326 Md. 617, 623–24, 606 A.2d 1072, 1075 (1992); *Falik v. Prince George's Hosp. & Medical Center*, 322 Md. 409, 417–18, 588 A.2d 324, 328 (1991); *Armacost*, 311 Md. at 72, 532 A.2d at 1060; *Sullivan v. Board of License Comm'rs*, 293 Md. 113, 121–23, 442 A.2d 558, 563 (1982); *Automobile Trade Ass'n v. Insurance Comm'r*, 292 Md. 15, 21–26, 437 A.2d 199, 202–04 (1981); *Governor v. Exxon Corp.*, 279 Md. 410, 440–41, 370 A.2d 1102, 1119 (1977), *aff'd*, 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978);

2. Article 8 of the Maryland Declaration of Rights provides:
   "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

*County Council v. Investors Funding*, 270 Md. 403, 442, 312 A.2d 225, 246 (1973); *Mayor of Baltimore v. William E. Koons, Inc.*, 270 Md. 231, 236–38, 310 A.2d 813, 816–17 (1973). As Chief Judge Murphy recently observed in *Insurance Commissioner v. Bankers Independent Insurance Company*,

> "a legislatively delegated power to make rules and regulations is administrative in nature, and it is not and cannot be the power to make laws; it is only the power to adopt regulations to carry into effect the will of the legislature as expressed by the statute. Legislation may not be enacted by an administrative agency under the guise of its exercise of the power to make rules and regulations by issuing a rule or regulation which is inconsistent or out of harmony with, or which alters, adds to, extends or enlarges, subverts, impairs, limits, or restricts the act being administered."

326 Md. at 624, 606 A.2d at 1075. It is axiomatic, therefore, that an administrative regulation must be consistent with the letter and policy of the statute under which the administrative agency acts. *Id.* at 623, 606 A.2d at 1075; *Falik*, 322 Md. at 417, 588 A.2d at 328; *Armacost*, 311 Md. at 74, 532 A.2d at 1061; *Sullivan*, 293 Md. at 121, 442 A.2d at 563; *William E. Koons, Inc.*, 270 Md. at 237, 310 A.2d at 817.

COMAR 21.10.04.06B, the regulation invalidated by the circuit court under the delegation doctrine, was adopted by the Board of Public Works and became effective January 9, 1989.[3] The Board of Public Works has been given broad authority by the General Assembly to adopt regulations in the procurement area, including regulations governing ap-

---

3. COMAR 21.10.04.06B was proposed for adoption on September 23, 1988, along with numerous other updates and amendments to the existing procurement regulations. 15:20 Md.Reg. Part II (Sept. 23, 1988). After receipt of public comment, various revisions to the procurement regulations, including COMAR 21.10.04.04 and COMAR 21.10.04.06, were approved and adopted by the Board of Public Works on December 21, 1988. 15:27 Md.Reg. 3138 (Dec. 30, 1988).

peals to the MSBCA. *See* Maryland Code (1988), § 12–101(b)(2)(ii) of the State Finance and Procurement Article.[4] Therefore, we begin our analysis by examining the statutes authorizing appeals to the MSBCA.

## A.

At the time of Warwick's appeal,[5] § 15–219 provided in relevant part:

"(b) *Review of claim.*—(1) Subject to paragraph (2) of this subsection, the head of the unit[6] engaged in procurement of the construction shall review the contract claim.[7]

(2) If the unit is part of a principal department or other equivalent unit, the Secretary of the principal department or the equivalent official shall review the contract claim, unless review has been delegated by regulation to the head of the unit.

"(c) *Notice of decision.*—The person who reviews a contract claim under subsection (b) of this section shall:

(1) investigate the contract claim; and

(2) give the contractor written notice of a resolution of the contract claim within 180 days after receiving the contract claim or a longer period to which the parties agree.

"(d) *Decision not to pay claim.*—(1) A decision not to pay a contract claim is a final action for the purpose of appeal to the [MSBCA].

---

**4.** Hereinafter all statutory references are to Md.Code (1988), State Finance and Procurement Article, unless otherwise indicated.

**5.** Section 15–219 has been amended by Ch. 317 of the Acts of 1992. *See infra* footnote 9.

**6.** A "unit" is defined as "an officer or other entity that is in the Executive Branch of the State government and is authorized by law to enter into a procurement contract." § 11–101(v)(1).

**7.** A "'contract claim' means a claim that relates to a procurement contract [and] includes a claim about the performance, breach, modification, or termination of the procurement contract." § 15–215(b).

(2) The failure to reach a decision within the time required under subsection (c) of this section is deemed to be a decision not to pay the contract claim."

Relative to an appeal from an agency's decision on a contract claim § 15–220 provided:

"(a) *In general.*—Except for a contract claim related to a lease for real property, a bidder or offeror, a prospective bidder or offeror, or a contractor may appeal the final action of a unit to the [MSBCA].

(b) *Time for filing.*—An appeal under this section shall be filed:

\* \* \* \* \* \*

(2) for a contract claim, within 30 days after receipt of the notice of a final action."

In *Taxiera v. Malkus,* 320 Md. 471, 480–81, 578 A.2d 761, 765 (1990), we reiterated the principles we utilize in statutory interpretation:

"Again and again, we have said that the cardinal rule of statutory construction is to ascertain and effectuate the legislative intention, *Harford County v. University,* 318 Md. 525, 529, 569 A.2d 649 (1990); *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471 (1988). While the language of the statute is the primary source for determining legislative intent, *State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275 (1975), the plain meaning rule is not absolute. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987). Rather, the statute is to be construed reasonably with reference to the purpose, aim, or policies of the Legislature reflected in the statute. *Id.* Words in a statute must, therefore, be read in a way that advances the legislative policy involved. *Morris v. Prince George's Co.,* 319 Md. 597, 603–04, 573 A.2d 1346 (1990). And where two statutes purport to deal with the same subject matter, they must be construed together as if they were not inconsistent with one another. *Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007 (1977); *Comm'n on Md. Discipline v. Bendler,* 280 Md. 326, 330, 373 A.2d 1232 (1977). In this regard, the courts strongly

favor a harmonious interpretation in construing the related statutes which gives full effect to both statutes, even where they were enacted at different times and without relation to one another."

■ Construing § 15–220 in light of § 15–219, we conclude that, when a state agency fails to act within the statutorily mandated time-frame, no written notice of final action need be received by the contractor in order to begin the contractor's period for filing an appeal to the MSBCA. Under § 15–220, "[a]n appeal ... shall be filed ... for a contract claim, within 30 days after receipt of the notice of a final action." Yet, this section must be read consistently with § 15–219(d). Section 15–219(d) contains two subparagraphs which, when arranged conjunctively, provide as follows:

"The failure to reach a decision within the time required under subsection (c) of this section [*i.e.*, within 180 days after receiving the contract claim or a longer period of time to which the parties agree] is deemed to be a decision not to pay the contract claim [and a] decision not to pay the contract claim is a final action for purpose of appeal to the [MSBCA]."

■ In 1985, the General Assembly, in response to complaints from contractors that State agencies were taking too long to review contract claims and issue final decisions, enacted the language that was codified as § 15–219(c) and (d). *See* Ch. 678 of the Acts of 1985.[8] The contractors complained that they could not appeal to the MSBCA until

---

**8.** Chapter 678 was introduced by Delegate Barbara Kreamer as H.B. 1117. In an April 3, 1985 memorandum to the Senate Economic and Environmental Affairs Committee, she stated:

"The current process for resolving construction contract disputes is unlimited. A regulation now in effect states that all claims shall be rendered 'within 180 days of receipt of the contractor's written claim, unless the procurement officer determines that a longer period is necessary to resolve the claim.' This language preserves the state agency as the unrestricted arbiter of disputes, subject to appeal after potentially prolonged investigation."

the agency issued a final decision and that this authority to issue a final decision was solely within the discretion of the agency. *Appeal of the Driggs Corp.*, 2 MSBCA ¶ 121, at 4 (Md. State Bd. Contr.App.1986).

Prior to 1985, the state procurement law was codified at Md.Code (1981 Repl.Vol), Art. 21, §§ 1–101 to 9–218. Section 7–201 provided in relevant part:

"*(a) Authority of procurement officer to negotiate and resolve disputes.*—Upon timely demand, as defined in regulations promulgated by the Department [of General Services], by a ... contractor, the responsible procurement officer of the using agency may, consistent with the budget and all applicable laws and regulations, negotiate and resolve disputes relating to ... a contract which has been entered into by the State....

"*(b) Resolution to accord with regulations; decision to be in writing; application of Administrative Procedure Act.*—The resolution of these disputes shall be in accordance with regulations established by the respective departments, and the procurement officer's decision shall be in writing....

"*(c) Review of procurement officer's decision.*—The decision of the procurement officer to resolve or not to resolve a dispute shall be reviewed by the agency head unless otherwise provided by regulation.... The reviewing authority may approve or disapprove the procurement officer's decision.... The decision of the reviewing authority is deemed final action by the agency, department, or its equivalent as the case may be.

"*(d) Appeal to Maryland State Board of Contract Appeals.*— ...

"(2) Within 30 days of receipt of notice of a final action disapproving a settlement or approving a decision not to settle a dispute relating to a contract entered into by the State, the contractor may appeal to the Maryland State Board of Contract Appeals."

Section 7–201 was originally enacted as part of Ch. 775 of the Acts of 1980.

In 1985, in addition to the enactment of Ch. 678 which added the language codified at § 15–219(c) and (d) to the procurement article, the General Assembly, by Ch. 12 of the Acts of 1985, transferred Article 21, including any amendments to Article 21 by an Act of the General Assembly of 1985, to Division II of the newly created State Finance and Procurement Article, which was created by Ch. 11 of the Acts of 1985. As a result of these 1985 enactments, § 15–219(c) and (d) were codified at Md.Code (1985), § 17–201(c) of the State Finance and Procurement Article, and § 15–220 was codified at Md.Code (1985), § 17–201(e) of the State Finance and Procurement Article. Chapter 840 of the Acts of 1986 repealed and recodified § 17–201 and transferred its provisions without substantive change to § 11–137 of the State Finance and Procurement Article. Chapter 48 of the Acts of 1988 repealed and recodified § 11–137 and transferred its provisions without substantive change to §§ 15–215 to 15–223, including the language currently codified at 15–219(c) and (d).

Warwick's assertion that the contractor's time for filing an appeal to the MSBCA does not begin until "after receipt of the notice of final action" ignores the remedial action taken by the General Assembly when it enacted Ch. 678. By enacting Ch. 678, the Legislature expressly authorized appeals by contractors to the MSBCA when the agency fails to reach a decision within the 180 days of receipt of the contract claim, notwithstanding the absence of notice of a final action by the agency. To assert that, before the time for an appeal begins to run, the contractor is entitled to receipt of the notice of a final action by the agency would render nugatory § 15–219(d).

### B.

█ The next question is whether the time limitations for filing an appeal to the MSBCA provided by § 15–220(b) are binding on a contractor, when a state agency fails to reach a decision within the time-frame required by § 15–219(c) and § 15–219(d).[9] Warwick urges us to construe §§ 15–219

---

**9.** In 1992, the General Assembly addressed this problem. House Bill 452, enacted as Ch. 317 of the Acts of 1992, amended § 15–219(d)(2) to provide:

"The failure to reach a decision within the time required under subsection (c) of this section *may be* deemed, at the option of the contractor, *to be a decision not to pay the contract claim."*

(emphasis added to reflect new language). The Floor Report to H.B. 452 aptly summarizes this amendment to the current law.

"House Bill 452 gives a contractor who has submitted a contract claim to a State governmental unit the *option* to determine that the failure of the unit to resolve the claim within 180 days is a final decision for purposes of an appeal....

"Under current law, a State official who reviews a contract claim must give the contractor written notice of resolution of the claim within 180 days after receiving the claim. A decision by the State unit not to pay the contract claim is a final action for purposes of an appeal to the State Board of Contract Appeals. The failure of the State to reach a final decision within the 180 day period is deemed to be a decision not to pay the contract claim. The time for the filing of an appeal on a contract claim is within 30 days after receipt of a notice of final action (§§ 15–219(c) and (d) and 15–220(b)(2) of the State Finance and Procurement Article).

"The bill reflects concern for the subcontractor whose appeal rights may be forfeited because the contractor does not have an attorney

and 15–220 in the same manner that federal courts have construed somewhat similar provisions of the federal procurement statute, the Contract Disputes Act of 1978, Pub.L. No. 95–563, 92 Stat. 2383 (codified at 41 U.S.C. §§ 601–613 (1982)) ("CDA").[10]    Federal courts have interpreted the twelve-month limitations provision for filing an appeal as being permissive, not mandatory, for the "deemed denied" provision that applies when a contracting officer fails to issue a decision within the statutorily required time-frame. *See Borough of Alpine v. United States,* 923 F.2d 170 (Fed.Cir.1991); *Pathman Constr. Co., Inc. v. United States,* 817 F.2d 1573 (Fed.Cir.1987); *Structural Finishing, Inc. v. United States,* 14 Cl.Ct. 447 (1988); *Dawco Constr., Inc. v. United States,* 12 Cl.Ct. 445 (1987); *Malissa Co., Inc. v. United States,* 11 Cl.Ct. 389 (1986); *LaCoste v. United States,* 9 Cl.Ct. 313 (1986); *Turner Constr. Co. v. United States,* 9 Cl.Ct. 214 (1985); *Vemo Co. v. United States,* 9 Cl.Ct. 217 (1985); *G & H Mach. Co. v. United States,* 7 Cl.Ct. 199 (1985).    Because we believe that the applicable federal statutory provisions are sufficiently distinct from §§ 15–219 and 15–220, we decline Warwick's invitation to construe the statutes in a similar fashion.

The CDA provides that "[a]ll claims by a contractor against the government relating to a contract shall be submitted to the contracting officer for a decision."   41 U.S.C. § 605(a).   Section 605(c)(2) provides that

"[a] contracting officer shall, within sixty days of receipt of a submitted certified claim over $50,000 [11] [either]

---

to monitor the 180–day period and who may not receive any notice from the State unit."

**10.**   Hereinafter all references to a section of the Contract Disputes Act of 1978 are to Title 41 of the United States Code (1982).

**11.**   The CDA makes a distinction between claims under and over $50,000.   41 U.S.C. § 605(c) provides:

"(1) A contracting officer shall issue a decision on any submitted claim of $50,000 or less within sixty days from his receipt of a written request from the contractor that a decision be rendered within that period.   For claims of more than $50,000, the contractor

(A) issue a decision; or

(B) notify the contractor of the time within which a decision will be issued."

And, in any event, "[t]he decision of a contracting officer on submitted claims shall be issued within a reasonable time...." 41 U.S.C. § 605(c)(3).[12] If the contracting officer fails to issue a timely decision,

"[a] contractor may request the agency board of contract appeals to direct a contracting officer to issue a decision in a specified period of time, as determined by the board, in the event of undue delay on the part of the contracting officer."

41 U.S.C. § 605(c)(4). Under the CDA, a contractor aggrieved by a decision of the contracting officer has two avenues of redress. The contractor may appeal the contracting officer's decision to an agency board of contract appeals, which is the functional equivalent of the MBSCA, 41 U.S.C. § 606,[13] or the contractor may bring a direct action on the claim in the United States Claims Court, 41 U.S.C. § 609.[14] Section 609(a)(3) provides that the contrac-

---

shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable."

**12.** 41 U.S.C. § 605(c)(3) provides:
"The decision of a contracting officer on submitted claims shall be issued within a reasonable time, in accordance with regulations promulgated by the agency, taking into account such factors as the size and complexity of the claim and the adequacy of the information in support of the claim provided by the contractor."

**13.** 41 U.S.C. § 606 provides:
"Within ninety days from the date of receipt of a contracting officer's decision under section 605 of this title, the contractor may appeal such decision to an agency board of contract appeals, as provided in section 607 of this title."

**14.** 41 U.S.C. § 609(a) provides in relevant part:
"(1) ... [I]n lieu of appealing the decision of the contracting officer under section 605 of this title to an agency board, a contractor may bring an action directly on the claim in the United States

tor's direct action on its claim in the United States Claims Court

"shall be filed within twelve months from the date of the receipt by the contractor of the decision of the contracting officer concerning the claim, and shall proceed de novo in accordance with the rules of the appropriate court."

Warwick urges this Court to construe § 15–219 relative to § 15–220 in the same manner that federal courts have interpreted 41 U.S.C. § 605(c)(5) relative to the time limitations for filing a direct action in the United States Claims Court provided by 41 U.S.C. § 609(a)(3). Section 605(c)(5) provides:

"Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in [the CDA]. However, in the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer."

Placing much emphasis on the language "and will authorize the commencement of the appeal or suit on the claim as otherwise provided in [the CDA]," federal courts have interpreted § 605(c) as merely authorizing contractors to file an appeal or suit, rather than, requiring them to do so. *Pathman*, 817 F.2d at 1577. The *Pathman* court reasoned that

"[t]he word 'authorize' is commonly interpreted as permitting (rather than mandating) an action. *Webster's Ninth New Collegiate Dictionary* 117 (1985) defines the word in terms of other permissive language such as 'sanction,' 'empower' and 'justify,' and in phrases such as, 'to invest esp. with legal authority' and to 'furnish a

---

Claims Court, notwithstanding any contract provision, regulation, or rule of law to the contrary."

ground for.' Nowhere in the various definitions does the author indicate usage of the word in a mandatory sense.

"By 'authorizing' the contractor to file suit, 'the plain language of [section [605](c)(5) ] provides that the contractor has the legal *option or permission* to go forward, when the Government has not issued a timely decision, by filing a direct access suit in the United States Claims Court.' *Vemo,* 9 Cl.Ct. at 220 (emphasis in original). The provision is designed to enable the contractor to obtain a judicial determination of its claim (or a determination by a board of contract appeals, if the contractor follows that procedure) without awaiting the decision of a contracting officer who has failed to render a decision within the specified time limits. Nothing in the language of section [605](c)(1) even suggests, however, that in giving the contractor this remedy Congress intended to compel him to use it. The contractor's right to institute suit under the 'deemed denied' provision is permissive, not mandatory."

817 F.2d at 1577 (citations omitted). In light of the language of the CDA, its legislative history and its basic purpose, the federal courts have concluded

"[t]hat the 12–month limitations period prescribed by section 609(a)(3) on the commencement of an action in [the United States Claims Court] does not begin to run until the receipt by the contractor of a decision by the contracting officer on the claim.... On the other hand, section 605(c)(5) authorizes a contractor, without awaiting a decision by the contracting officer, to institute an action for judicial relief at any time after the expiration of the period which section 605(c) allows the contracting officer for the issuance of his decision."

*G & H Machinery Co.,* 7 Cl.Ct. at 203.

In concluding that the 12–month limitations provision, 41 U.S.C. § 609(a)(3), does not apply to a 41 U.S.C. § 605(c)(5) "deemed denied" decision, federal courts have also placed much reliance on the language "receipt by the contractor of

the decision of the contracting officer." Section 609(a)(3) "contemplates that an actual 'receipt' of an actual decision will occur [and there] can be no such actual 'receipt' of a decision which does not truly exist but whose existence is only 'deemed' for the purpose of authorizing suit on the undecided claims." *Turner Const. Co.*, 9 Cl.Ct. at 216.

Although the provisions of Maryland's procurement statute contain similar language, we believe the plain language of §§ 15–219 and 15–220 is sufficiently distinct from the language of the federal provisions, and consequently, § 15–220 requires, rather than merely permits, a contractor to file an appeal to the MSBCA within 30 days from the expiration of the period in which the agency was statutorily required to decide the claim. Several reasons support our conclusion.

Unlike 41 U.S.C. §§ 605 and 609, which consistently and uniformly refer to the "decision" of the contracting officer, the General Assembly clearly recognized a difference between a "decision" and a "final action." Under §§ 15–220 and 15–219, only a final action is appealable to the MSBCA. A final action includes both "a decision not to pay a contract claim" or "the failure to reach a decision" within the statutorily required time-frame.

Perhaps most significantly, the "deemed denied" provision of § 15–219(d) simply includes no permissive language akin to the "and will authorize commencement of the appeal or suit on the claim" provided in 41 U.S.C. § 605(c)(5), which the federal courts found important in reaching their conclusion. Section 15–219(d) simply provides that the failure to reach a decision within the statutorily required time-frame is deemed to be a decision not to pay the contract claim, and therefore, a "final action" for purposes of appeal to the MSBCA. Section 15–220(b) requires an appeal to be filed within 30 days from receipt of the notice, whether written or not, of a final action. There is simply no legislative intention, expressed either by the plain words of the statute or in the materials in the legislative bill file from 1985, that would indicate the General Assembly intended to treat

differently final actions arrived at through an agency's failure to issue a decision in the statutorily mandated time-frame from final actions arrived at through an agency's written decision.

## C.

■ In light of our interpretation of §§ 15–219 and 15–220, we can only conclude that COMAR 21.10.04.04E and COMAR 21.10.04.06 are reasonable and consistent with the letter and policy of the statutes under which the Board of Public Works was authorized to act. COMAR 21.10.04.04E does no more than restate § 15–219(c)(2) and (d). The regulation provides:

"E. Construction Contracts.

"(1) The contractor shall be notified in writing of the reviewing authority's decision within 180 days of receipt of the claim by the procurement officer or within such enlarged period as may be agreed upon by the contractor. The requirement for notification is satisfied upon mailing of the decision within the 180–day period or the enlarged period.

"(2) Failure to reach a decision within the time prescribed in § E(1) shall be considered a decision to deny the claim that may be appealed in accordance with COMAR 21.10.04.06."

COMAR 21.10.04.06 restates § 15–220, but in addition, recognizes that under § 15–219(d)(2) the failure of the reviewing authority to reach a decision within 180 days after receipt of a contract claim is deemed to be a decision not to pay the contract claim and is a final action for purposes of appeal. COMAR 21.10.04.06 provides in relevant part:

"A. An appeal to the [MSBCA] shall be mailed or otherwise filed within 30 days of the receipt of notice of the final decision. The notice shall indicate that an appeal is intended, shall reference the decision from which the appeal is being taken, and shall identify the contract involved.

"B. An appeal based upon a failure to reach a decision within the period prescribed in COMAR 21.10.04.04E shall be filed within 30 days of the expiration of the prescribed period."

The regulations do no more than mirror §§ 15–219 and 15–220, and therefore, do not violate the separation of powers doctrine.

### III.

■ In reversing the MSBCA, the circuit court made a second ruling that, in light of its well defined scope of review, was also erroneous. The circuit court stated that "[t]his Court adopts the prior finding that Appellant, 'Warwick's' President, Ms. Wist, 'was repeatedly 'put off';' ... [and] further finds as a fact that Appellant's Request for an Equitable Adjustment remained under active consideration by the [State,] and, therefore, impliedly was never denied...."

Under § 15–223(a)(1), "[a] decision of the [MSBCA] is subject to judicial review in accordance with § 10–215 of the State Government Article." Under the latter statute a reviewing court may

"(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision of the agency:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the agency;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary or capricious."

Md.Code (1984), § 10–215(g)(3) of the State Government Article. Judicial review of a decision by the MSBCA is limited by this statute, and a court is not free to conduct its

own fact finding. As we explained in *State Administration Board of Election Laws v. Billhimer,* 314 Md. 46, 548 A.2d 819 (1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989),

"In determining whether an agency's decision is supported by substantial evidence, we are mindful that substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' In applying the substantial evidence test, we must not substitute our judgment for the expertise of the agency, for the test is a deferential one, requiring 'restrained and disciplined judicial judgment so as not to interfere with the agency's factual conclusions[.]' This deference applies not only to agency fact-finding, but to the drawing of inferences from the facts as well. When, however, the agency's decision is predicated solely on an error of law, no deference is appropriate and the reviewing court may substitute its judgment for that of the agency. In brief, so long as the agency's decision is not predicated solely on an error of law, we will not overturn it if a reasoning mind could reasonably have reached the conclusion reached by the agency."

*Id.* at 58–59, 548 A.2d at 825–26 (citations omitted).

The circuit court substituted its judgment for that of the MSBCA when it made the factual finding that Warwick's request for an equitable adjustment remained under active consideration by the State and impliedly was never denied. By making its own finding of fact, the circuit court exceeded its statutory scope of review, and thus erred.

Moreover, even assuming the circuit court's finding that Warwick's claim was impliedly never denied was supported by substantial evidence, such a finding would be erroneous as a matter of law. Under § 15–219(d), the failure by the state agency to reach a decision on a contract claim within 180 days after receiving the contract claim or a longer period to which the parties agree is deemed to be a decision not to pay the claim. The MSBCA findings in ¶¶ 3–4, *see supra* p. 478–479, make clear that no agreement was

reached by the parties to extend the time for a final decision by the State. Thus, the failure by the State to reach a decision within 180 days of receipt of Warwick's contract claim is deemed, as a matter of law, a decision not to pay the contract claim. The circuit court's finding to the contrary was erroneous.

## IV.

■ Finally, in an effort to sustain the circuit court's reversal of the MSBCA, Warwick makes several arguments which we also shall reject. First, Warwick asserts its letter of June 18, 1990, by itself was not a "claim" within the meaning of § 15–215, *see supra* note 6, at 482, and therefore, did not trigger the 180 day rule of § 15–219(d). This argument is wholly without merit. Under § 15–215(b) a " 'contract claim' means a claim that relates to a procurement contract [and] includes a claim about the ... modification ... of the procurement contract." Although Warwick attempts to portray the letter as a quotation for additional work, we recognize that forty-one of the fifty-three lines of text in the letter address the costs of the completed project and that it requests an "equitable adjustment as a change order to our contract." In addition, Warwick repeatedly recognized this letter as a claim. It did so in its pleadings at the MSBCA, in an affidavit from its President, and in testimony elicited in the hearing at the MSBCA.

Warwick's second argument is that the letter only ripened into a claim when Warwick's President was advised over the telephone that its claim was being reviewed. This argument is contrary to the statutory time limitations that unambiguously begin upon receipt of the contract claim by the person who reviews the claim. *See* § 15–219(c). It is also without merit.

Warwick's reliance on the long form Disputes Clause set forth in COMAR 21.07.01.06 to support its argument that its letter was not a claim is similarly without merit. COMAR 21.07.01.06 requires a Disputes Clause be included in

all state contracts and sets forth two model clauses, a short form [15] and a long form[16]. First, in rejecting this argument by Warwick, we note that the long form of the Disputes Clause was not part of the contract. Rather, the short form of the Disputes Clause was included as the applicable provision. Second, even if the long form of the Disputes Clause was applicable, that provision would be of no assistance to Warwick in its assertion that its letter was not a claim. It is irrefutable that the letter was "a written demand or . assertion ... seeking, as a legal right, the payment of money, [or] adjustment ... of [the] contract terms...." It thus was a claim within the meaning of COMAR 21.07.01.06B, the long form of the Disputes Clause. Warwick's assertion that it was a voucher, invoice, or request for payment that was not in dispute when submitted is wholly without merit.

The short answer to Warwick's shotgun attack that its letter was not a claim is a finding by the MSBCA. The

---

**15.** COMAR 21.07.01.06A sets forth the short form of the Disputes Clause. It provides in its entirety:
"A. Alternate Disputes Clause (short form). 'This contract shall be subject to the provisions of State Finance and Procurement Article, Title 15, Subtitle 2, Annotated Code of Maryland, and COMAR 21.10 (Administrative and Civil Remedies). Pending resolution of a claim, the Contractor shall proceed diligently with the performance of the contract in accordance with the procurement officer's decision.'"

**16.** COMAR 21.07.01.06B sets forth the long form of the Disputes Clause. It provides in relevant part:
"B. Alternate Disputes Clause (long form).
'(1) This contract is subject to the provisions of State Finance and Procurement Article, Title 15, Subtitle 2, Annotated Code of Maryland and COMAR 21.10 (Administrative and Civil Remedies)....
(3) As used herein, 'claim' means a written demand or assertion by one of the parties seeking, as a legal right, the payment of money, adjustment or interpretation of contract terms, or other relief, arising under or relating to this contract. A voucher, invoice, or request for payment that is not in dispute when submitted is not a claim under this clause. However, if the submission subsequently is not acted upon in a reasonable time, or is disputed as to liability or amount, it may be converted to a claim for the purpose of this clause.'"

MSBCA made a finding of fact that the letter constituted a claim. This finding was not rejected by the circuit court in this case. This finding by the MSBCA is supported by substantial evidence, is not arbitrary or capricious, and accordingly, will not be disturbed. *Billhimer*, 314 Md. at 58–59, 548 A.2d at 826; *Supervisor of Assessments v. Asbury Methodist Home, Inc.*, 313 Md. 614, 625–26, 547 A.2d 190, 195–96 (1988); *Mayor of Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383, 395, 396 A.2d 1080, 1087–88 (1979); *Bulluck v. Pelham Wood Apartments*, 283 Md. 505, 512–13, 390 A.2d 1119, 1123–24 (1978).

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH INSTRUCTIONS TO AFFIRM THE ORDER OF THE MARYLAND STATE BOARD OF CONTRACT APPEALS;**

**COSTS TO BE PAID BY THE APPELLEE.**