Dear Honorable George C. Edwards State Delegate
You have requested our opinion concerning the application of the Forest Conservation Act to local government projects in Allegany and Garrett counties.[1] Specifically, you ask whether the use of State funds to support such projects renders them subject to the Act despite a statutory exemption for counties with a certain level of forest cover.
For the reasons set forth below, we conclude that the Forest Conservation Act does not apply to local government projects) even those involving State funds) in counties exempt from the Act. However, certain forest conservation requirements in a separate statute apply to highway projects, regardless of location.
 I Forest Conservation Legislation
A. State Law Before 1991
Prior to enactment of the Forest Conservation Act, State-mandated efforts to compensate for the impact of development on forests were directed solely to projects underwritten by State funds. Legislation enacted in 1987 obligated a State agency that undertook a construction project to minimize the clearing of trees and, if a threshold area of forest was cleared, to undertake or underwrite a reforestation project. Chapter 610, Laws of Maryland 1987, then codified as Annotated Code of Maryland, Natural Resources Article ("NR"), § 5-103. Two years later, those obligations were extended to "any other person who uses State funding and performs any construction activity with the State funding." Chapter 819, Laws of Maryland 1989, amending NR § 5-103(a)(2)(ii). The provisions of this forest conservation statute thus applied to State-funded construction projects throughout the State.[2]
B. 1991 Legislation
In 1991, the General Assembly again revisited the State's forest conservation law to enact a more comprehensive strategy for preservation of the State's forest cover. Chapter 255, Laws of Maryland 1991. The 1991 legislation extensively revised the existing forest conservation statute, both extending its application in certain respects and limiting its reach in others. In addition, that legislation enacted an extensive new regulatory scheme) commonly referred to as the Forest Conservation Act.
1. Revision of NR § 5-103
The 1991 legislation extended the existing statute to local government projects, even if State funding was not used, and raised the ceiling on required reforestation payments significantly.[3] Chapter 255, § 2, Laws of Maryland 1991, amending NR § 5-103. On the other hand, the breadth of that statute was substantially limited: it now applied only to highway construction projects. Id., § 2. Other types of projects were to be governed by the new Forest Conservation Act ("the Act"). Id., § 1, enacting NR § 5-1601 et seq.
2. Forest Conservation Act
The Forest Conservation Act is a comprehensive effort to stem the loss of the State's forest cover.[4] The Act establishes afforestation,[5] conservation, and reforestation[6]
requirements for subdivision plans and projects that require a grading or sediment control permit involving areas of 40,000 square feet or more. NR § 5-1602(a). Unlike the prior law, application of these requirements is not keyed to State funding of a project. Moreover, the requirements apply not only to units of State and local government, but to private entities as well. NR §§ 5-1601(dd) and 5-1602(a).
Under the Act, a person seeking a permit for a subdivision or a grading or sediment control permit must arrange for a licensed forester, licensed landscape architect, or other qualified professional to prepare a forest stand delineation which will be used during the preliminary review process to determine the most suitable and practical areas for forest conservation. NR § 5-1604. Following approval of the forest stand delineation, the applicant must arrange for a qualified professional to prepare a proposed forest conservation plan. Among other requirements, the forest conservation plan must include a map of the site, data relating to the site and conservation requirements, an afforestation or reforestation plan, and a two-year management agreement addressing how areas designated for afforestation or reforestation will be maintained. NR § 5-1605.
Afforestation or reforestation requirements are governed by formulas set forth in the Act. NR § 5-1606.[7] The statute also provides a sequence of preferred methods of afforestation and reforestation, retention and protection priorities, and priorities for afforestation and reforestation efforts. NR § 5-1607. Review of the forest conservation plan is to be concurrent with review of the subdivision plan or grading or sediment control permit application. NR § 5-1608(a).
The Act also provides an alternative in situations where afforestation or reforestation cannot reasonably be accomplished either on-site or off-site. In lieu of planting, a payment equal to $.10 per square foot ($4356 per acre) of the area of required planting may be made into the State Forest Conservation Fund or a local forest conservation fund. NR § 5-1610.
Local governments with planning and zoning authority are required to develop local forest conservation programs that meet or exceed standards under the Act. NR § 5-1603. Thus, the Act makes forest conservation efforts "an integral part of the local governmental process for the review and approval of any development project." 77 Opinions of the Attorney General 127, 132 (1992).
The Legislature charged the Department of Natural Resources ("DNR") with adopting regulations and developing guidance manuals to implement the Act. NR § 5-1609(a)(1). DNR was also to develop criteria for local forest conservation programs, a model local ordinance, and training programs for local officials. Id. Local forest conservation programs are subject to approval and periodic review by DNR. NR § 5-1603(a)-(c), (e). If a local government fails to adopt an approved forest conservation program, DNR must develop a State-level process to review forest conservation plans for that jurisdiction. NR §§ 5-1603(d), 5-1609(a)(1)(i)3.
DNR and local governments that have adopted their own programs are authorized to enforce the Act through administrative proceedings, such as revocation of the approval of a forest conservation plan and issuance of a stop work order. NR § 5-1612(a)-(c). If a person fails to comply with the Act, related regulations, a forest conservation plan, or an associated management agreement, DNR or local authorities are to assess a monetary penalty. NR § 5-1608(c). Finally, DNR and local governments may bring civil actions for injunctive relief or to impose civil monetary penalties for ongoing violations. NR § 5-1612(d).
3. Exemptions from Forest Conservation Act
At the same time that the Legislature extended conservation obligations generally to local government projects and private development, it also created a series of exemptions from the Act. See NR § 5-1602(b)(1)-(11). Some of those exemptions simply defer to other applicable laws governing conservation. For example, highway construction projects subject to the revised NR § 5-103
are exempt from the Act. NR § 5-1602(b)(1). Other exemptions reflect policy decisions not to impose the Act's requirements on certain activities. See, e.g., NR § 5-1602(b)(4) (certain agricultural activity), (b)(6) (maintenance of public utility rights-of-way).
Most relevant to your inquiry is an exemption that pertains to Allegany and Garrett counties. In particular, NR § 5-1602(b)(10) provides that "[t]he provisions of [the Forest Conservation Act] do not apply to . . . [a] county that has and maintains 200,000 acres or more of its land area in forest cover." At the time the Act was under consideration by the Legislature, only Allegany and Garrett counties exceeded this threshold, with forest covers of 212,459 and 294,843 acres, respectively. See "Percent of Forested Acreage by County: 1990," Legislative files for Senate Bill 224 and House Bill 199 (1991). We understand that both counties continue to maintain the acreage of forest cover required for this exemption.[8] II
DNR's Implementation of the Act
DNR's regulations implementing the Forest Conservation Act are codified in COMAR, Title 8, Subtitle 19. Chapter 1 of that subtitle contains general provisions, including definitions of terms, a description of the application of the Act, and exemptions. Chapter 2 addresses DNR's review and approval of local programs. Chapter 3 provides a model ordinance for local implementation of the Act. Chapter 4 establishes the State Forest Conservation Program. Chapter 5 governs forest conservation maintenance and management agreements. Finally, Chapter 6 pertains to DNR's training and enforcement responsibilities and sets forth the professional qualifications necessary to prepare a forest plan delineation or forest conservation plan.
Significant for purposes of your inquiry are regulations that pertain to local government projects, particularly those supported by State funds. One such regulation essentially reiterates the statutory exemption for counties that maintain at least 200,000 acres of forest cover. It provides, in pertinent part, that "[t]he provisions of [Title 8, Subtitle 19] do not apply to . . . [a] county that has and maintains 200,000 acres or more of its land area in forest cover and which has met the provisions of COMAR 08.19.02.01B or D . . . ." COMAR 08.19.01.04A(12). The cross-reference to provisions in Chapter 2 of the regulations concerns exemption from the requirement to prepare a local forest conservation program. One of those provisions, COMAR08.19.02.01D, identifies Allegany and Garrett counties as two counties that fall within the exemption; the other provision, COMAR 08.19.02.01B, specifies how other counties may document eligibility for the exemption with DNR.
Two other provisions of DNR's regulations state that the Act's requirements apply to county projects, particularly those financed with State funds. First, the same regulation that lists exemptions later states that the State forest conservation program set forth in Chapter 4 of the regulations applies to "any construction, project plan, grading, or sediment control activity, except for an activity regulated under [NR § 5-103], on areas 40,000 square feet or greater by . . . [a] unit of county government. . . ." COMAR 08.19.01.04B(2)(b).
Second, another regulation states that the State forest conservation program applies to "any construction, grading, or sediment control activity, or subdivision or project plan [on areas 40,000 square feet or greater] by a . . . [u]nit of county government, municipal corporation, or other political subdivision which uses State funds for that activity. . . ." COMAR08.19.04.01A(1)(b).
We understand that DNR has taken the position that, while the statute exempts counties with the requisite forest cover from the obligation to enact a local conservation program, any qualifying development activity by a local government in those counties is subject to the Act if it involves the use of State funds.[9] You have questioned that position.
 III Analysis
The answer to your inquiry turns on the proper interpretation of the exemption in NR § 5-1602(b)(10) for counties with the requisite amount of forest cover.
The cardinal rule of statutory construction is to ascertain and carry out the true intention of the legislature. See, e.g., Cooper v. Sacco, 357 Md. 622, 629, 745 A.2d 1074 (2000). Analysis begins with the statutory language itself. Rose v. Fox Pool Corp., 335 Md. 351, 359, 643 A.2d 906 (1994). "When the language of a statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis . . . is ordinarily required." Id. However, one is not precluded from consulting legislative history to determine legislative purpose. Id., citing Morris v. Prince George's County, 319 Md. 597, 603-04, 573 A.2d 1346 (1990). Thus, consideration may be given to "`external manifestations' or `persuasive evidence' including . . . amendments that occurred as it passed through the Legislature, its relationship to earlier . . . legislation, and other material that fairly bears on the fundamental issue of legislative purpose. . . ." Kaczorowski v. City of Baltimore, 309 Md. 505, 514-15, 525 A.2d 628 (1987).
Although an administrative interpretation is not binding on the courts, a contemporaneous interpretation of a statute by an agency charged with its administration will generally be accorded substantial deference. Fogle v. H G Restaurant, 337 Md. 441,455, 654 A.2d 449 (1995); Baltimore Gas Elec. Co. v. Public Serv. Comm'n, 305 Md. 145, 161, 501 A.2d 1307 (1986). Of course, an administrative practice is entitled to no weight if it is inconsistent with the statutory scheme. Brzowski v. Maryland Home Improvement Comm'n, 114 Md. App. 615, 634, 691 A.2d 699, cert. denied, 346 Md. 238, 695 A.2d 1227 (1997). Moreover, agency regulations must be consistent with the letter and spirit of the law under which the agency acts. Fogle v. H G Restaurant,337 Md. at 453; see also Maryland State Police v. Warwick Supply 
Equipment Co., 330 Md. 474, 481, 624 A.2d 1238 (1993). A. Statutory Text The language of the exemption is simple and unqualified: "The provisions of this subtitle [i.e., the Forest Conservation Act] do not apply to . . . [a] county that has and maintains 200,000 acres or more of its land in forest cover." NR § 5-1602(b)(10) (emphasis added). This language leaves little doubt that the exemption pertains to the entire Act. The only question concerning its application is whether a particular county has the requisite amount of forest cover. The legislative history of the Act confirms that the General Assembly meant what it said.
B. Legislative History
The Forest Conservation Act was introduced as an Administration proposal during the 1991 legislative session. Senate Bill 224/House Bill 199 (1991). Developed by a workgroup that grew out of the Governor's Task Force on Trees and Forests in Maryland, the bill was described as "a key component of a Statewide strategy to achieve no net loss of forest cover." See Senate Economic and Environmental Affairs Committee Floor Report, Senate Bill 224 (1991) ("Senate Floor Report"). In the original proposal, any projects then subject to the existing forest conservation statute (NR § 5-103), including local government projects financed with State funds, would have been exempt from the new Forest Conservation Act. See Senate Bill 224, First Reader (1991). The bill did not include any exemption based on the amount of existing forest cover in a county.
The Senate Economic and Environmental Affairs Committee approved Senate Bill 224, with substantial amendments worked out with the Administration. See Senate Floor Report. While those amendments modified NR § 5-103 in certain respects[10] and created additional exemptions to the Forest Conservation Act, local government projects financed with State funds remained subject to NR § 5-103
and exempt from the new Act. See Senate Bill 224, Third Reader (1991). The bill as ultimately passed by the Senate and referred to the House did not include a county exemption based on forest cover.
The House Environmental Matters Committee reported out Senate Bill 224 with extensive amendments. Among other things, those amendments limited application of the existing forest conservation statute (NR § 5-103)) and the corresponding exemption from the new Forest Conservation Act) to highway projects. Those amendments also made clear that other State and local government projects would become subject to the more detailed provisions of the new Act. At the same time, however, one of those amendments added a new exemption to the Act) the exemption for counties with more than 200,000 acres of forest cover that is now codified at NR § 5-1602(b)(10). The intended effect of this amendment, as described in the Committee's work papers, was to "[exempt] counties (from all requirements) if they have significant forest acreage (Allegany Garrett)." Legislative history file for Senate Bill 224 (1991).
The floor report of the Environmental Matters Committee made clear that, under its amendments, the new Act would apply "to both State and local development projects, except for highway projects," but that "counties that have and maintain 200,000 acres or more of its [sic] land area in forest cover," particularly Allegany and Garrett counties, would be exempt. Legislative file for Senate Bill 224.
The amendments proposed by the Environmental Matters Committee were approved by the full House. Senate Bill 224 passed the House, and the Senate then concurred in the House amendments. Upon approval of the Governor, Senate Bill 224 became Chapter 255, Laws of Maryland 1991.
C. Interpretation of DNR Regulations
The regulations that DNR adopted shortly after passage of the 1991 legislation, which remain in effect, appear consistent with this understanding of the exemption. At most, they are ambiguous. But ambiguity in the regulations cannot support an interpretation contrary to the evident legislative intent.
The DNR regulations contain an exemption parallel to the statutory exemption. COMAR 08.19.01.04A(12) provides that the forest conservation regulations do not apply to a county that has 200,000 acres or more of its land area in forest cover, if the provisions of COMAR 08.19.02.01B or D are met. By its own terms, the regulation exempts those counties that meet the forest cover threshold from the entire subtitle that is, all of the regulations implementing the Forest Conservation Act. This regulation thus appears to simply reiterate the statutory exemption with an added proviso that COMAR 08.19.02.01B or D also must be satisfied.
COMAR 08.19.02.01 B and D describe the circumstances under which a county is exempt from the obligation to adopt a local forest conservation program. In particular, COMAR 08.19.02.01D provides that Allegany and Garrett counties, and municipal corporations within the two counties, are exempt from the requirement that they adopt local forest conservation programs as long as the respective county continues to meet the 200,000 acre threshold. COMAR 08.19.02.01B states how other counties may qualify for that same exemption. Thus, those provisions do not narrow the exemption. Literally read, they simply require that a county demonstrate that it meets the 200,000 acre threshold to be exempt from the local program requirement and, as a result, be exempt from the rest of DNR's regulations under the Act as well. While the regulation is not a model of clarity, this literal reading is consistent with the statutory language and the legislative history.
A less literal reading of the regulation might construe the cross-references to the chapter concerning local forest conservation programs to indicate an intent by the drafter of the regulation to restrict the scope of the exemption to the obligation to adopt a local forest conservation program.[11]
However, it would be beyond the agency's authority to attempt by regulation to truncate the statutory exemption.[12] As noted above, two provisions of the regulations affirmatively declare that the State forest conservation program applies to county agencies and county projects underwritten by State funds. COMAR08.19.01.04B(2)(b); COMAR 08.19.04.01A(1)(b). However, neither of those provisions explicitly qualifies the exemption for those counties with extensive forest cover; both can be read in harmony with it. First, COMAR 08.19.01.04B(2)(b) reiterates the general statement in NR § 5-1602(a) that the Forest Conservation Act applies to certain projects of both State and local governments. Notably, the same statutory section and regulation both contain parallel recitations of the numerous exemptions from the Act. Read together with the forest cover exemption, these provisions simply recite the obligation of those local governments that do not qualify for that exemption.
Second, COMAR 08.19.04.01A(1)(b) states that the State forest conservation program applies to certain local government projects financed with State funds. This regulation can likewise be harmonized with the county-based exemption. This regulation answers a question not specifically addressed by the statute: whether the State program or the pertinent local forest conservation program governs a local project undertaken with State funds. Thus, for those counties to which the Act applies, the State forest conservation program, rather than the local program, governs such projects.[13]
Neither of these regulations purports to qualify the broad county-based exemption that appears in both the statute and the regulations. Read together with the regulatory exemption that exempts qualifying counties from the entire subtitle, these provisions simply do not apply to a county with the requisite forest cover.
D. Summary
The text of the statute states that counties with a certain amount of forest cover are exempt from the entire subtitle) that is, the Forest Conservation Act. It does not confine the exemption to the obligation to create a local forest conservation program. Nor is there any evidence in the legislative record of a legislative intent, unexpressed in the statute itself, to apply the Act to local government projects financed with State funds in otherwise exempt counties.
Nor has there been a longstanding legislative policy to tie the local receipt of State financial assistance to compliance with the State's forest conservation law. Indeed, the initial 1987 version of the State forest conservation law did not pertain to local projects at all. It is true that, as a result of 1989 amendments to NR § 5-103, local government projects supported by State funds became generally subject to the forest conservation requirements of that statute, regardless of location. However, it is also true that two years later the Legislature revamped that approach, retaining regulation of local highway projects in NR § 5-103, shifting regulation of other local projects to the more detailed and complex regime of the new Act, and exempting altogether counties with a certain level of existing forest cover.
It is not the role of an Attorney General's opinion to pass on whether the legislative decision to create a blanket exemption for certain counties was wise policy or represents sound stewardship of State resources. Rather, it is our role to discern the judgment that the Legislature made. The enactment of a comprehensive strategy for maintaining the State's forest cover evidently involved compromise and difficult policy judgments. One such judgment was that the new Act should not apply in those counties that met or exceeded a forest cover threshold of 200,000 acres. Therefore, in our view, DNR lacks authority to apply the State Forest Conservation Program to a local project) even one involving State funding) if the county qualifies for the statutory exemption.[14]
 III Conclusion
Local government projects in counties that maintain 200,000 acres or more in forest cover are exempt from the Forest Conservation Act, regardless of whether they are supported by State funding. However, the forest conservation requirements of NR § 5-103 apply to highway projects in those counties.
J. Joseph Curran, Jr. Attorney General
William R. Varga Assistant Attorney General
Robert N. McDonald Chief Counsel Opinions Advice
[1] You indicate that your inquiry is prompted by the possible application of the Act to a new Garrett County Health Department facility that is currently under construction.
[2] Under that statute, if construction activity required the clearing of trees on an area equal to one acre or more, the entity responsible for the construction was to locate an equivalent area of publicly-owned land that the Department of Natural Resources ("DNR") would reforest at a cost to the entity of not more than $500 per acre. If available land could not be located in accordance with the statute, the entity was to contribute $500 per acre to the reforestation fund maintained by DNR. See NR § 5-103 (1989 Replacement Volume).
[3] Instead of requiring payments of up to $500 per acre, the 1991 statute now set the rate at $.10 per square foot i.e., $4,356 per acre. Chapter 255, § 2, Laws of Maryland 1991. This new rate was the same as required by the Forest Conservation Act. See NR § 5-1610.
[4] The Act defines "forest" generally as "a biological community dominated by trees and other woody plants covering a land area of 10,000 square feet or greater." NR § 5-1601(k)(1). A similar definition of "forest" appears in NR § 5-103(a)(4), except that the latter provision requires a minimum area of one acre.
[5] "Afforestation" is defined as "the establishment of a tree cover on an area from which it has always or very long been absent, or the planting of open areas which are not presently in forest cover." NR § 5-1601(b).
[6] "Reforestation" is defined, in part, as "the creation of a biological community dominated by trees and other woody plants containing at least 100 trees per acre with at least 50% of those trees having the potential of attaining a 2 inch or greater diameter measured at 4.5 feet above the ground, within 7 years." The term includes "landscaping of areas under an approved landscaping plan that establishes a forest that is at least 35 feet wide and covering 2,500 square feet of area." NR § 5-1601(ff).
[7] Afforestation and reforestation requirements are based on the amount of land area, land use category, existing forest cover, and conservation efforts. Afforestation ensures the establishment of a minimum percentage of forest cover where a certain threshold did not previously exist. See NR § 5-1606(a). Reforestation is required if the area of forest cover retained is less than a break even point calculated under the Act. Clearing of existing forest cover above the appropriate conservation threshold requires reforestation at a rate of 1/4 acre for each acre removed, subject to a credit for each acre of forest retained. Clearing of existing forest cover below that threshold requires reforestation at a rate of two acres for each acre removed. See NR § 5-1606(b)-(e).
[8] During the decade following its enactment, the Legislature modified the Act in several respects, none of which bear on the exemption for counties that meet the forested acreage threshold. See Chapter 489, Laws of Maryland 1993 (granting local governments increased flexibility in development of local programs, increased enforcement authority, and the ability to recover certain costs; establishing the Advisory Group on Forest Conservation); Chapter 556, Laws of Maryland 1994 (providing that local forest conservation programs could provide waivers in connection with certain previously paved surfaces); Chapter 630, Laws of Maryland 1995 (providing an exemption if trees must be cut to comply with certain Federal Aviation Administration requirements); and Chapter 559, Laws of Maryland 1997 (authorizing forest mitigation banking; altering the preferred sequence for afforestation and reforestation; modifying application of the Act to certain utility infrastructure; authorizing DNR to recover certain costs when it administers a State forest conservation program in a jurisdiction that does not have an approved local program in effect).
[9] We understand that there is some dispute as to whether this position has been consistently held by the agency or is of recent vintage. A longstanding agency interpretation reflected in regulations adopted close in time to the enactment of a statute is ordinarily entitled to "great deference." See Baltimore Gas 
Elec. Co. v. Public Serv. Comm'n, 305 Md. 145, 161, 501 A.2d 1307
(1986). However, in light of our conclusion in Part III of this opinion that the legislative intent is clear and that the regulations are, at most, ambiguous, we need not resolve the duration of the agency's policy.
[10] Among other things, those amendments modified the existing forest conservation law (NR § 5-103) to increase the maximum payment for reforestation to the same level as set forth in the proposed Forest Conservation Act.
[11] This reading would be at odds with the design of the Act, under which local governments adopt their own forest conservation programs and the State program serves only as a fall back in the event that a local government defaults on its obligation. See 77 Opinions of the Attorney General 127 (1992).
[12] This conclusion does not detract from the broad authority otherwise granted to DNR to implement the Forest Conservation Act. See letter of advice from Assistant Attorney General Robert A. Zarnoch to Shauna G. Mitchell, Department of Legislative Reference, dated February 28, 1996 (concluding that DNR could adopt regulation requiring a "declaration of intent" with respect to certain exemptions).
[13] A separate provision applies the State program to local government projects in those counties subject to the Act, but that have failed to adopt a local program if State funds are not involved. See COMAR 08.19.04.01A(2).
[14] We do not address whether, under appropriate circumstances, State funding might be conditioned on conservation efforts such as reforestation. This would depend upon whether the Legislature itself imposed such conditions or authorized to the grantor agency to impose them.
 *Page 86