643 A.2d 906

John B. ROSE

v.

FOX POOL CORPORATION.

No. 105, Sept. Term, 1993.

Court of Appeals of Maryland.

July 5, 1994.

352

**354**

Charles J. Muskin, Glen Burnie, for appellant.

John B. Kaiser (Kevin J. McCarthy, McCarthy, Bacon & Costello, all on brief), Lanham, for appellee.

Argued before ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ., and CHARLES E. ORTH, Jr.,* Associate Judge of the Court of Appeals (retired), Specially Assigned.

RAKER, Judge.

Maryland Code (1974, 1989 Repl.Vol. & 1993 Cum.Supp.) § 5–108(a)[1] of the Courts and Judicial Proceedings Article provides that no cause of action for personal injury resulting from the defective and unsafe condition of an improvement to real property accrues if the injury occurs more than 20 years after the date the entire improvement first became available for its intended use. The Circuit Court for Anne Arundel County entered summary judgment in favor of the defendant manufacturer on the ground that § 5–108(a) barred the plaintiff's suit. This appeal followed.

We issued a writ of certiorari on our own motion prior to consideration of the case by the Court of Special Appeals, 332 Md. 701, 632 A.2d 1207. The principal issue raised in this appeal is whether § 5–108(a) applies to a cause of action brought against the manufacturer of a residential, in-ground swimming pool for injuries caused by an alleged defect in the pool's design. We answer that question in the affirmative. We hold, however, that summary judgment was improperly granted as there is a genuine issue of material fact as to whether the plaintiff's injury occurred more than 20 years after the date the entire improvement first became available

---

* Orth, J., participated in the hearing of this case, but died prior to the decision and adoption of this opinion by the Court.

1. Unless otherwise specified, all statutory references herein are to Maryland Code (1974, 1989 Repl.Vol. & 1993 Cum.Supp.), Courts and Judicial Proceedings Article.

for its intended use. We therefore reverse the judgment of the trial court.

## I.

In 1971, Rudi and Hannelore Schanne decided to install an in-ground swimming pool at their home in Glen Burnie, Maryland. The Schannes purchased the pool from Appellee Fox Pool Corporation [Fox], a designer, manufacturer and supplier of residential swimming pools. The pool consisted of a vinyl liner supported by metal bracing, measured 20 feet in width by 40 feet in length, and was designed such that it had both an area of shallow water for wading and an area of deeper water, ostensibly for diving. In the deeper end, the pool's interior walls sloped at a 45 degree angle towards a small "target area" for diving in the center. Although the depth of the water in the "target area" was 7 feet 6 inches, the water in other areas of the deeper end was as shallow as 3 feet deep because of the pool's sloping walls.

In early 1971, Fox shipped the unassembled pool to the Schannes, who subsequently hired B & H Construction Company [B & H] to install the pool at their home. In deposition testimony, Mr. Schanne recalled that the pool was installed "early in the spring" of 1971, "somewhere around March." Also in deposition testimony, Mrs. Schanne recalled that installation of the pool was completed by May 1971 and that she began swimming in the pool by the end of that same month. Mrs. Schanne also testified that B & H gave her a warranty card for the pool on the day that construction was completed. When she was given the card, Mrs. Schanne filled in the necessary information and returned the card to B & H, which in turn sent the card back to Fox. The date on the completed warranty card, obtained from Fox during pre-trial discovery, is July 12, 1971.

On July 4, 1991, Appellant John B. Rose attended a party at the Schannes' home. Rose was a neighbor of the Schannes and had enjoyed the use of their pool numerous times over the years. When Rose dove from the side of the pool on this

occasion, however, he struck his head on either the bottom or the side of the pool and was rendered quadriplegic. He subsequently filed suit against Fox in the Circuit Court for Anne Arundel County, asserting causes of action in negligence, strict liability, and breach of warranty. The gravamen of Rose's complaint against Fox was that the pool was defectively designed and generally unsafe for diving and that Fox had failed to adequately warn its customers of the pool's dangerous condition.

On November 16, 1992, Fox filed a motion for summary judgment based upon § 5–108(a) of the Courts and Judicial Proceedings Article. Section 5–108 provides, in full:

(a) *Injury occurring more than 20 years later.*—Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

(b) *Action against architect, professional engineer, or contractor.*—Except as provided by this section, a cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect, professional engineer, or contractor for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

(c) *Three-year limitation after accrual of cause of action.*—Upon accrual of a cause of action referred to in subsections (a) and (b) of this section, an action shall be filed within 3 years.

(d) *Supplier defined.*—(*l*) In this subsection, "supplier" means any individual or entity whose principal business is

the supply, distribution, installation, sale, or resale of any product that causes asbestos-related disease.

(2) This section does not apply if:

(i) The defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred;

(ii) In a cause of action against a manufacturer or supplier for damages for personal injury or death caused by asbestos or a product that contains asbestos, the injury or death results from exposure to asbestos dust or fibers which are shed or emitted prior to or in the course of the affixation, application, or installation of the asbestos or the product that contains asbestos to an improvement to real property;

(iii) In other causes of action for damages for personal injury or death caused by asbestos or a product that contains asbestos, the defendant is a manufacturer of a product that contains asbestos; or

(iv) In a cause of action for damages for injury to real property that results from a defective and unsafe condition of an improvement to real property:

1. The defendant is a manufacturer of a product that contains asbestos;

2. The damages to an improvement to real property are caused by asbestos or a product that contains asbestos;

3. The improvement first became available for its intended use after July 1, 1953;

4. The improvement:

A. Is owned by a governmental entity and used for a public purpose; or

B. Is a public or private institution of elementary, secondary, or higher education; and

5. The complaint is filed by July 1, 1993.

(e) *When action accrues.*—A cause of action for an injury described in this section accrues when the injury or damage occurs.

In support of its contention that § 5–108(a) bars Rose's claims, Fox asserted (1) that the Schannes' swimming pool is an "improvement to real property"; (2) that Rose's injuries resulted from the alleged "defective and unsafe condition" of the pool; and (3) that at the time Rose was injured, more than 20 years had passed since the' pool "first bec[ame] available for its intended use." Following an oral hearing on the motion, Judge H. Chester Goudy granted summary judgment in favor of Fox on the ground that Rose's claims were barred by § 5–108(a). Rose appealed.

Rose's principal contention before this Court is that § 5–108(a) should not and was never intended to apply to manufacturers of consumer goods. Rose also submits two alternative arguments in support of his assertion that summary judgment was improperly granted. First, Rose asserts that his injuries did not "result from" a defective and unsafe condition of an "improvement to real property" within the meaning of § 5–108(a). Rose contends that an in-ground swimming pool is a consumer good within the meaning of Maryland Code (1975, 1992 Repl.Vol.), § 2–105 and § 9–109(1) of the Commercial Law Article and suggests that the pool should therefore not be considered an "improvement to real property." Second, relying upon Mrs. Schanne's testimony that she was given the pool's warranty card on the day that construction of the pool was completed and the fact that the warranty card was dated July 12, 1971, Rose asserts that there is a genuine issue of material fact with respect to whether, at the time of his injury on July 4, 1991, the requisite 20 years had passed since the entire improvement first became available for its intended use. We shall address each of Rose's arguments in turn.

## II.

The issues raised in this appeal require us to discern the meaning of § 5–108(a). The cardinal rule of statutory construction is to effectuate and carry out legislative intent. See, e.g., Comptroller v. Jameson, 332 Md. 723, 732, 633 A.2d 93, 97 (1993); Geico v. Insurance Comm'r, 332 Md. 124, 131, 630 A.2d 713, 717 (1993). Every statute is enacted to further

some underlying goal or purpose—"to advance some interest, to attain some end"—and must be construed in accordance with its general purposes and policies. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987); *see also State v. Fabritz,* 276 Md. 416, 421, 348 A.2d 275, 278 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976). When called upon to construe a particular statute, we begin our analysis with the statutory language itself since the words of the statute, construed according to their ordinary and natural import, are the primary source and most persuasive evidence of legislative intent. *Jameson,* 332 Md. at 732, 633 A.2d at 97–98; *Comptroller v. Fairchild Industries,* 303 Md. 280, 284, 493 A.2d 341, 343 (1985). The statute must be construed as a whole so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory. *Condon v. State,* 332 Md. 481, 491, 632 A.2d 753, 758 (1993); *Md. Port Adm. v. Brawner Contracting Co.,* 303 Md. 44, 60, 492 A.2d 281, 289 (1985).

When the language of a statute is plain and clear and expresses a meaning consistent with the statute's apparent purpose, no further analysis of legislative intent is ordinarily required. *Kaczorowski,* 309 Md. at 515, 525 A.2d at 633. As we explained, however, in *Morris v. Prince George's County,* 319 Md. 597, 573 A.2d 1346 (1990):

> [O]ur endeavor is always to seek out the legislative purpose, the general aim or policy, the ends to be accomplished, the evils to be redressed by a particular enactment. In the conduct of that enterprise, we are not limited to study of the statutory language. The plain meaning rule " 'is not a complete, all-sufficient rule for ascertaining a legislative intention....' " The "meaning of the plainest language" is controlled by the context in which it appears. Thus, we are always free to look at the context within which the statutory language appears. Even when the words of a statute carry a definite meaning, we are not "precluded from consulting legislative history as part of the process of determining the legislative purpose or goal" of the law.

319 Md. at 603–04, 573 A.2d at 1349 (citations and footnote omitted); *see also Baltimore Cty. C.A.U.T. v. Baltimore Cty.*, 321 Md. 184, 203–04, 582 A.2d 510, 519–20 (1990); *Kaczorowski*, 309 Md. at 513, 525 A.2d at 632. The legislative history of a statute, including amendments that were considered and/or enacted as the statute passed through the Legislature, and the statute's relationship to earlier and subsequent legislation are "external manifestations" or "persuasive evidence" of legislative purpose that may be taken into consideration. *Maryland Nat'l Bank v. Pearce*, 329 Md. 602, 619, 620 A.2d 941, 949 (1993) (*quoting Kaczorowski*, 309 Md. at 515, 525 A.2d at 632).

## A.

■ The specific statutory language of § 5–108(a) precludes all actions which meet two requirements: (1) the plaintiff's injuries must have resulted from the alleged defective and unsafe condition of "an improvement to real property"; and (2) 20 years must have passed since the "entire improvement first bec[ame] available for its intended use." The "no cause of action" language of § 5–108(a) is clear: it creates a blanket prohibition against all suits that meet the statutory criteria. Thus, as the statute was drafted, the defendant's identity is irrelevant in determining whether § 5–108(a) bars a particular cause of action.

Unlike subsection (b), which specifically names architects, professional engineers, and contractors as persons entitled to greater protection from liability than that afforded by subsection (a), and unlike subsections (d)(2)(i) (defendant in possession and control) and (d)(2)(ii), (iii), and (iv) (all relating to the exclusion of manufacturers and suppliers of asbestos), subsection (a) does not identify the class of persons to which it applies. It is well settled that where a statute specifically lists certain classes of persons as excluded from coverage, the express exclusion of certain persons raises the inference that all other persons not excepted are within the statute's coverage. *See Office & Prof. Employees Int'l v. MTA*, 295 Md. 88, 96, 453 A.2d 1191, 1195 (1982); *Montgomery v. State*, 292 Md. 155, 162, 438 A.2d 490, 493 (1981); *see also* C. Sands, 2A

Sutherland Stat. Const. § 47.23 (5th ed. 1992) ("The enumeration of exclusions from the operation of a statute indicates that the statute should apply to all cases not specifically excluded."). Here, the express exclusion of certain persons in the various provisions of subsection (d), and the singling out of other persons for special protection in subsection (b), gives rise to the inference that subsection (a) provides immunity from liability to all other persons, including, necessarily, product manufacturers.

Rose, however, protests the application of § 5–108(a) to suits against product manufacturers. Relying upon select passages from the legislative history of § 5–108 which discuss the application of the statute to architects, engineers, builders and contractors, Rose contends that the General Assembly never intended that manufacturers fall within the scope of the statute. Although the plain language of § 5–108(a) makes clear that all actions are barred by the statute, we shall review the legislative history of the entire statute to ensure that the "plain meaning" rule does not lead us to a construction at odds with the General Assembly's intent in enacting this statute of repose.

### B.

The earliest version of § 5–108 was enacted by the General Assembly in 1970. 1970 Laws of Maryland, Ch. 666. Codified at Article 57, § 20, the statute provided in full:

**Actions for damages resulting from defective or unsafe real property improvements.**

No action to recover damages for injury to property real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages incurred as a result of said injury or death, shall be brought more than twenty years after the said improvement was substantially completed. This limitation shall not apply to any action brought against the person who, at the time the injury was sustained, was in actual possession and control as owner, tenant, or otherwise of the

said improvement. For purposes of this section, "substantially completed" shall mean when the entire improvement is first available for its intended use.

As we discussed in *Whiting–Turner Contract. Co. v. Coupard*, 304 Md. 340, 499 A.2d 178 (1985), two developments in the law—the elimination of the "privity of contract" doctrine as a defense and the application of the "discovery rule" [2]— provided the impetus behind the enactment of Article 57, § 20 and the enactment of statutes of repose in other states across the nation. 304 Md. at 349, 499 A.2d at 183; *see also Hilliard & Bartko v. Fedco Systems*, 309 Md. 147, 160, 522 A.2d 961, 968 (1987). In the context of actions for injuries arising out of an improvement to real property, those two changes in the law resulted in a dramatic expansion of liability, both with respect to the persons who might be held liable and with respect to the duration of that liability. *Whiting–Turner*, 304 Md. at 349, 499 A.2d at 183. Architects and engineers, particularly concerned by these developments, turned to state legislatures for protection from this expanded liability. As a consequence, statutes of repose, aimed at addressing the problem of expanded liability resulting from defective and unsafe conditions in improvements to real property, were enacted by some

---

**2.** In the context of actions for injuries arising out of an improvement to real property, the effect of the privity of contract doctrine was to deny recovery- to any person who did not have a contractual relationship with the party that designed or constructed the improvement. Beginning in the 1950's, courts around the country slowly began to make exceptions to the privity requirement and, in cases specifically dealing with claims against architects, contractors, and others in the construction process, courts rejected the "privity of contract" doctrine as a defense. *See generally Krieger v. J.E. Greiner Co.*, 282 Md. 50, 382 A.2d 1069 (1978). At about the same time, courts began to apply the "discovery rule" in cases involving improvements to real property. *See, e.g., Steelworkers Holding v. Menefee*, 255 Md. 440, 258 A.2d 177 (1969) (malpractice action against architect); *Mattingly v. Hopkins*, 254 Md. 88, 253 A.2d 904 (1969) (malpractice action against professional engineer). The discovery rule provides that the action accrues and the statute of limitations begins to run not when the wrong actually occurs but rather when the plaintiff has in fact discovered that an injury has been suffered or by the exercise of reasonable diligence should have discovered the injury. *See generally Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981).

thirty states between 1964 and 1970. *See* Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-action,* 18 Cath.U.L.Rev. 361, 361 (1969)[3]. Article 57, § 20 was the Maryland General Assembly's "response to the problems arising from the expansion of liability based on the defective and unsafe condition of an improvement to real property." *Whiting–Turner,* 304 Md. at 349, 499 A.2d at 183.

Most jurisdictions which enacted statutes of repose adopted some variation of the model statute endorsed by the American Institute of Architects, the National Society of Professional Engineers, and the Associated General Contractors. The model statute provided, in pertinent part:

**3.** Special limitations statutes dealing with claims arising out of defects in improvements to real property currently exist in 43 other jurisdictions. *See* Ala.Code § 6–5–218 (1993); Alaska Stat. § 09.10.055 (1993); Ariz.Rev.Stat.Ann. § 12–552 (Supp.1993); Ark.Code Ann. § 16–56–112 (Michie 1987); Cal.Civ.Proc.Code §§ 337.1, 337.15 (West 1982); Conn. Gen.Stat. § 52–584a (1989); Del.Code Ann. tit. 10, § 8127 (1975); D.C.Code Ann. § 12–310 (1989); Fla.Stat.Ann. § 95.11(3)(c) (West 1982); Ga.Code Ann. §§ 9–3–50 to 9–3–53 (1982); Hawaii Rev.Stat. § 657–8 (1985); Idaho Code § 5–241 (1990); Ind.Code.Ann. §§ 34–4–20–1 to 34–4–20–4 (Burns 1986 & Supp.1993); Ky.Rev.Stat.Ann. § 413.135 (Michie/Bobbs–Merrill 1992); Me.Rev.Stat.Ann. tit 14, § 752–A (West 1980); Mass.Ann.Laws ch. 260, § 2B (Law.Co-op.1992); Mich.Comp.Laws § 600.5839 (1987); Minn.Stat.Ann. § 541.051 (West Supp.1994); Miss.Code.Ann. § 15–1–41 (Supp.1993); Mo.Ann.Stat. § 516.097 (Vernon Supp.1994); Mont.Code Ann. § 27–2–208 (1993); Neb.Rev.Stat. § 25–223 (1989); Nev.Rev.Stat.Ann. §§ 11.202 to 11.206 (Michie 1986); N.H.Rev.Stat.Ann. § 508:4–b (Supp.1993); N.J.Stat. Ann. § 2A:14–1.1 (West 1987); N.M.Stat.Ann. § 37–1–27 (Michie 1990); N.C.Gen.Stat. § 1–50(5)–(7) (Supp.1993); N.D.Cent.Code § 28–01–44 (1991); Ohio Rev.Code.Ann. § 2305.131 (Anderson 1991); Okla.Stat. Ann. tit. 12, §§ 109–110 (West 1988); Or.Rev.Stat. § 12.135 (1993); 42 Pa.Cons.Stat.Ann. § 5536 (1981); R.I.Gen.Laws § 9–1–29 (1985); S.C.Code Ann. §§ 15–3–630 to 15–3–670 (Law.Co-op.1977 & Supp. 1993); S.D.Codified Laws Ann. § 15–2A–1 to 15–2A–10 (Supp.1994); Tenn.Code Ann. §§ 28–3–201 to 28–3–205 (1980); Tex.Civ.Prac. & Rem.Code Ann. § 16.008 to .009 (West 1986); Utah Code Ann. § 78–12–25.5 (1992); Va.Code Ann. § 8.01–250 (Michie 1992); Wash.Rev. Code Ann. §§ 4.16.300 to 4.16.320 (West 1992); W.Va.Code § 55–2–6a (1994); Wis.Stat.Ann. § 893.89 (West 1983); Wyo.Stat. § 1–3–111 (1993). New York has a statute of limitations for professional liability claims generally. N.Y.Civ.Prac.L. & R. § 214.6 (Consol.Supp.1993).

No action, whether in contract (oral or written, sealed or unsealed), in tort or otherwise, to recover damages

(i) for a deficiency in the design, planning, supervision or observation of construction or construction of an improvement to real property,

(ii) for injury to property, real or personal, arising out of any such deficiency, or

(iii) for injury to the person or for wrongful death arising out of any such deficiency, shall be brought against *any person performing or furnishing the design, planning, supervision or observation of construction, or construction of such an improvement* more than four years after substantial completion of such an improvement.

*Limitation of Action Statutes, supra,* at 365 n. 31 (emphasis added); *J.H. Westerman Co. v. Fireman's Fund Ins. Co.,* 499 A.2d 116, 121 (D.C.1985). Those states adopting some version of the model statute enacted statutes with language limiting the application of the statute to a specified group of defendants, usually those engaged in the design and construction of improvements. Some states went further than the model statute in identifying the class of persons to be protected by a particular statute of repose and expressly limited the statute of repose to actions against specific, named classes of persons. *See, e.g.,* Conn.Gen.Stat. § 52–584a (1989) (architects and professional engineers); Me.Rev.Stat.Ann. tit. 14, § 752–A (West 1980) (duly licensed or registered architects and engineers); Mich.Comp.Laws § 600.5839 (1987) (state licensed architects and professional engineers); R.I.Gen.Laws § 9–1–29 (1985) (architects, professional engineers, contractors, subcontractors, and materialmen); Tex.Civ.Prac. & Rem.Code Ann. § 16.008 to .009 (West 1986) (licensed or registered architects and engineers).

Bills were introduced in the Maryland General Assembly during the 1967,[4] 1968[5] and 1969[6] legislative sessions which would have created a statute of repose applicable only to "persons performing or furnishing the design, planning, supervision of construction or construction" of an improvement. The General Assembly, however, did not enact a bill with such limiting language. The statute that was finally enacted in 1970 was Article 57, § 20,[7] which simply provided that, under the specified circumstances, no cause of action could be brought.

Article 57, § 20 was modified as part of the code revision project when the Courts and Judicial Proceedings Article was enacted effective January 1, 1974. Codified at § 5–108 of that Article, the statute read as follows:

> (a) *Injury resulting from improvement to realty.*—Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real

---

4. Senate Bill 240, which would have created a 9–year statute of repose for persons "performing or furnishing the design, planning, supervision of construction or construction" of an improvement to real property, passed in the Senate but did not pass the House.

5. Senate Bill 88 and Senate Bill 68, both of which would have created a 9–year statute of repose, contained language identical to that contained in Senate Bill 240, *supra* note 4. Senate Bill 601 provided that "no action, based upon any deficiency in the design, planning, supervision, construction or observation of construction upon real property or an improvement thereto" could be brought more than 6 years after completion of the project. All three bills were referred to the Senate Committee on Judicial Proceedings, but received no further action. House Bill 858, containing language identical to that of Senate Bill 240, *supra* note 4, would have created a 6–year statute of repose. House Bill 858 likewise received no further action after being referred to committee.

6. Senate Bill 162, which would have also created a 9–year statute of repose, likewise contained language identical to that of Senate Bill 240, *supra* note 4, but received no further action after being referred to committee.

7. Senate Bill 241 of 1970 initially failed in the House, but was revised, amended to change the limit from 9 years to 20 years, and enacted as § 20 of Article 57.

property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

(b) *Exception.*—This section does not apply if the defendant was in actual possession and control of the property as owner, tenant, or otherwise when the injury occurred.

(c) *When action accrues.*—A cause of action for an injury described in this section accrues when the injury or damage occurs.

During the late 1970's, architects and engineers began to complain that the 20–year limitation provided by § 5–108(a) did not afford them sufficient protection from liability. Citing statistics which indicated that most claims brought against architects and engineers are brought within 8 years of the completion of a project and pointing out that other states had enacted much shorter time limits with respect to suits against architects and engineers, the General Assembly was urged to shorten the statutory time period in which suits could be brought. *See, e.g.,* Statement by the Consulting Engineers Council of Maryland, Inc. before the House Judiciary Committee on Senate Bill 18, April 6, 1977 (available at the Department of Legislative Reference, Bill File for Senate Bill 18 (1977)); *see also Limitation of Action Statutes, supra,* at 365–69 (comparison of statutes of repose).

In apparent response, by Chapter 698 of the Acts of 1979, the Legislature created a new subsection (b) that applied only to claims against architects and professional engineers:

(b) *Action against architect or professional engineer.*—A cause of action for damages does not accrue and a person may not seek contribution or indemnity from any architect or professional engineer for damages incurred when wrongful death, personal injury, or injury to real or personal property, resulting from the defective and unsafe condition of an improvement to real property, occurs more than 10 years after the date the entire improvement first became available for its intended use.

1979 Laws of Maryland, Ch. 698.[8]  Significantly, the retention of subsection (a) and the creation of a new subsection applying only to architects and professional engineers made it clear that subsection (a) applied to persons other than architects and professional engineers.  In 1980, by Chapter 605, the General Assembly added contractors to the list of persons afforded the special protections of subsection (b).

During 1988 and 1989, the question of whether § 5–108(a) applies in actions against product manufacturers became a critical issue in a number of suits seeking damages for personal injury and property damage from manufacturers of construction materials containing asbestos.  In every one of those cases, § 5–108(a) was held to bar claims for damages filed against the manufacturers of asbestos whose products had been incorporated into buildings which had been completed over 20 years prior to the discovery of the plaintiffs' injuries.[9] *See* Department of Legislative Reference Update, Vol. 90–1, *Asbestos Liability—The Statute of Repose,* January 11, 1990 [Leg.Ref.Update] at 5–7 (discussing applicability of § 5–108(a) in asbestos cases); *Bill Analysis—Senate Bill 500,* 1990 Senate Judicial Proceedings Committee.  Those court decisions prompted calls for immediate legislative action regarding the application of the statute of repose to manufacturers generally and, more specifically, to manufacturers of asbestos.

---

**8.** The 1979 bill also created a new subsection (c), which provided that "[u]pon accrual of a cause of action referred to in subsections (a) and (b), an action shall be filed within 3 years."  With the enactment of new subsections (b) and (c), the former subsections (b) and (c) were redesignated as subsections (d) and (e), respectively.

**9.** *See First United Methodist Church v. U.S. Gypsum Co.,* 882 F.2d 862 (4th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990); *In re Personal Injury Asbestos Cases,* Circuit Court for Baltimore City (Levin, J., November 1, 1989); *Baltimore County, Maryland v. Keene Corp. et. al.,* Circuit Court for Baltimore County, Case No. 84–CG–1776 (Fader, J., April 12, 1988); *State of Maryland v. Keene Corp. et. al.,* Circuit Court for Anne Arundel County, Civil Action No. 11–8600 (Thieme, J., June 9, 1989); *Mayor and City Council of Baltimore v. Keene Corp. et. al.,* Circuit Court for Baltimore City, Case No. 84268068/CL25639 (Davis, J., June 2, 1989).

Those lower court decisions also generated much debate and controversy regarding the original intent of the 1970 General Assembly as to whether manufacturers were ever intended to be protected by § 5–108(a). *See, e.g.,* Leg.Ref.Update at 8. In 1990, two bills were introduced in the General Assembly— Senate Bill 500 and House Bill 1025—that, as originally drafted, excluded actions against "a manufacturer or supplier of any materials, equipment, machinery, or other articles that are part of an improvement to real property" from the scope of § 5–108(a). During consideration of both bills, proponents of the express exclusion of all manufacturers claimed that the statute of repose was never intended to apply to manufacturers. In response, opponents argued that manufacturers were intended to be included or that, at best, the 1970 Legislature had never considered whether the statute would apply to manufacturers.[10]

After considerable debate within the Legislature, Senate Bill 500 and House Bill 1025 were both amended and the broad language excluding all manufacturers from § 5–108(a) was replaced by language excluding only manufacturers of

---

**10.** The belief that the 1970 General Assembly never intended to extend the protections of § 5–108(a) to manufacturers was reflected in the original versions of the Preamble of House Bill 1025 and Senate Bill 500, which both read as follows:

WHEREAS, It is the intent of the General Assembly *to declare the original legislative intent* with respect to the persons to which Section 5–108 of the Courts and Judicial Proceedings Article shall apply; and WHEREAS, It is the intent of the General Assembly to clarify Section 5–108 of the Courts and Judicial Proceedings Article *to state the original legislative intent* that Section 5–108 of the Courts and Judicial Proceedings Article has no application to causes of action against manufacturers and suppliers of products which become part of and generate within an improvement to real property a defective and unsafe condition ...

(emphasis added). The language above was subsequently deleted from both bills and replaced, by amendment, with the following language: "WHEREAS, The General Assembly finds that, notwithstanding any court opinions to the contrary, *the legislative intent of the General Assembly in enacting Chapter 666 of the Acts of 1970 is unclear....*" (emphasis added).

asbestos products.[11]   Although the enrolled version of Senate Bill 500 specifically identified only manufacturers and suppliers of asbestos products, many opponents of the bill asserted that the bill was ambiguous and that, as written, Senate Bill 500 could be construed to exclude other manufacturers from § 5–108(a).

Senate Bill 500 passed both Houses but was vetoed by Governor William Donald Schaefer on May 29, 1990.   In his letter to the President of the Senate, the Governor wrote:

Many of those in favor of this legislation argue that the bill is only a clarification of the original 1970 enactment,

---

**11.**   As amended, subsection (F)(1) of both Senate Bill 500 and House Bill 1025 excluded: "a cause of action against a manufacturer for damages for:

(I) Wrongful death or personal injury that results from a latent disease;

(II) Wrongful death or personal injury that results from an occupational disease;   or

(III) Injury to real or personal property that results from a defective and unsafe condition of an improvement to real property, if:

1.   The defective and unsafe condition is caused by asbestos or an article that contains asbestos;   and

2.   The asbestos, or the article that contains asbestos, is part of an improvement to real property."

Senate Bill 500 and House Bill 1025 differed, however, in their treatment of suppliers.   Subsection (F)(2) of Senate Bill 500 excluded "a cause of action against a supplier of material, equipment, machinery, or another article that is part of an improvement to real property if:

(I) The supplier knew or should have known that the article was in a defective condition or was unreasonably dangerous;   and

(II) The cause of action against the supplier is for damages for:

(1) Wrongful death or personal injury that results from a latent disease;

(2) Wrongful death or personal injury that results from an occupational disease;   or

(3) Injury to real or personal property that results from a defective and unsafe condition of an improvement to real property, provided:

A.   The defective and unsafe condition is caused by asbestos or an article that contains asbestos;   and

B.   The asbestos, or the article that contains asbestos, is part of an improvement to real property."

House Bill 1025 excluded any action against a "supplier of material, equipment, machinery, or another article that is part of an improvement to real property, if the supplier knew or should have known that

which they further believe has been incorrectly interpreted by many trial courts. To the extent that it is really possible to know what a Legislature "intended" 20 years ago, our own analysis leads to the conclusion that this bill is not a clarification of the law, but is in fact a major, substantive revision of the Statute of Repose. That fact must not be lost.

*Id.* at 2 (available at the Department of Legislative Reference, Bill File for Senate Bill 500). In concluding his veto letter, the Governor pledged "to work with the sponsors and advocates of this issue next Session on compromise legislation. . . ." *Id.* at 3.

In 1991, two administration bills—Senate Bill 335 and House Bill 496—were introduced which expressly excluded only manufacturers of asbestos or products containing asbestos. In testimony before the Senate Judicial Proceedings Committee and the House Judiciary Committee, David Iannucci, the Chief Legislative Officer of the Office of the Governor, explained:

> The legislation [Senate Bill 335 and House Bill 496] would waive the protection of the Statute of Repose only for asbestos. *While other materials could later be found to be dangerous, later General Assemblies would be in a position to make the policy determinations relevant to those materials.*

*Id.* at 4 (emphasis added). Senate Bill 335, approved by both Houses, was enacted as Chapter 271, 1991 Laws of Maryland, and the exclusion of asbestos manufacturers and suppliers appeared in § 5–108 as subsections (d)(2)(ii), (iii) and (iv).

As it existed at the time of Rose's suit and as it exists today, § 5–108(a) provides a 20–year limitation for all actions resulting from the defective and unsafe condition of an improvement to real property. Section 5–108(a) thus creates a broad grant of immunity for all persons who might otherwise be held liable

the article was in a defective condition or was unreasonably dangerous."

for a defect in an improvement to real property, subject only to the express exclusions of § 5–108(d). While the defendant's identity is crucial in determining the applicability of subsections (b) and (d), it plays no role in determining whether subsection (a) applies. Under subsection (a), a defendant's immunity from suit after 20 years have expired does not turn on the defendant's occupation or on the type of service or product the defendant provides. Rather, the defendant's immunity from liability emanates from the fact that the plaintiff's injury "resulted from a defective or unsafe condition of an improvement to real property" that was substantially completed over 20 years prior to the time of the plaintiff's injury. *See First United Methodist Church v. U.S. Gypsum Co.,* 882 F.2d 862, 865 (4th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990); *J.H. Westerman Co.,* 499 A.2d at 120.

## C.

We are aware that some courts in other jurisdictions have excluded product manufacturers and suppliers from the coverage of a particular statute of repose.[12] *See, e.g., Luzadder v. Despatch Oven Co.,* 834 F.2d 355, 359 (3d Cir.1987) (Pa. law), *cert. denied,* 485 U.S. 1035, 108 S.Ct. 1595, 99 L.Ed.2d 909 (1988); *Baker v. Walker & Walker, Inc.,* 133 Cal.App.3d 746, 184 Cal.Rptr. 245, 250–51 (1982); *Dighton v. Federal Pacific Elec. Co.,* 399 Mass. 687, 506 N.E.2d 509, 515, *cert. denied,* 484 U.S. 953, 108 S.Ct. 345, 98 L.Ed.2d 371 (1987); *Condit v. Lewis Refrigeration Co.,* 101 Wash.2d 106, 676 P.2d 466, 468–69 (1984). We note, however, that in each of those cases the particular statutes of repose at issue were variants of the

---

**12.** Although most states enacted statutes which do not expressly address whether manufacturers are within the class of persons protected, of the few states that do specify whether manufacturers are among the persons protected, the treatment of manufacturers is divided. *Compare* those including manufacturers, Hawaii Rev.Stat. § 657–8 (1985); Wyo. Stat. § 1–3–111 (1993) *with* those expressly excluding manufacturers, D.C.Code Ann. § 12–310(b)(3) (1989); Minn.Stat.Ann. § 541.051 (West Supp.1994); Va.Code.Ann. § 8.01–250 (Michie 1992).

model statute which provided that only "persons performing or furnishing the design, planning, supervision or observation of construction, or construction of such an improvement" were protected from liability after the specified period of time. In concluding that manufacturers were not covered by similarly worded statutes of repose, those court decisions rested primarily on the fact that the manufacturer defendants were not performing one of the *activities* specified in those statutes.

We further note that judicial exclusion of manufacturers from statutes of repose has not been universal and some courts having considered even a variant of the narrower "person performing or furnishing the design, planning, supervision or observation of construction, or construction" language of the model statute have concluded that product manufacturers may indeed fall within the class of persons protected. *See, e.g., Adair v. Koppers Co.,* 741 F.2d 111, 116 (6th Cir. 1984) (Ohio law); *In re Beverly Hills Fire Litigation,* 695 F.2d 207, 224–25 (6th Cir.1982) (Ky. law), *cert. denied,* 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983); *KSLA–TV Inc. v. Radio Corp. of America,* 501 F.Supp. 891, 897–98 (W.D.La.1980), *aff'd,* 693 F.2d 544 (5th Cir.1982); *Northbrook Excess & Surplus Ins. Co. v. J.G. Wilson Corp.,* 250 Ga. 691, 300 S.E.2d 507, 508–09 (1983); *Howell v. Burk,* 90 N.M. 688, 568 P.2d 214, 223 (Ct.App.), *cert. denied,* 91 N.M. 3, 569 P.2d 413 (1977); *McCormick v. Columbus Conveyer Co.,* 522 Pa. 520, 564 A.2d 907, 910–11 (1989); *Eagles Court Condo. Owners v. Heatilator,* 239 Va. 325, 389 S.E.2d 304, 305–06 (1990).[13]

It is significant that Maryland did not enact a statute with language similar to that of the model statute adopted by most states but instead enacted a statute with language that, on its

---

**13.** Some court decisions holding that a statute of repose could apply to a products liability action prompted legislative enactment of amendments expressly excluding such actions from the ambit of the particular statute of repose. *See, e.g., Wesley Theological Seminary v. U.S. Gypsum Co.,* 876 F.2d 119, 120 (D.C.Cir.1989) (D.C. law), *cert. denied,* 494 U.S. 1003, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990); *Smith v. Allen–Bradley Co.,* 371 F.Supp. 698, 701 (W.D.Va.1974) (Va. law).

face, applies to all suits without regard to the identity of the defendant. In *First United Methodist Church v. U.S. Gypsum Co.*, 882 F.2d 862 (4th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990), the United States Court of Appeals for the Fourth Circuit, until today the only appellate court addressing the question of whether Maryland's statute of repose applies to claims against product manufacturers, held that § 5–108(a) does apply to such claims. There, a church brought suit in 1988 against the manufacturer of asbestos-containing acoustical plaster which had been applied to the church's ceiling in 1961. *Id.* at 864. The suit was brought prior to the revision of the statute and, thus, manufacturers of asbestos products were not specifically excluded from § 5–108(a). Summary judgment was granted in favor of the manufacturer on the ground that the claims were barred by § 5–108(a). On appeal, the church's "primary contention [was] that manufacturers are not in the class of persons protected by the statute." *Id.* The Fourth Circuit soundly rejected that argument: "[Section 5–108] is completely silent as to any limitation on the class of persons it protects. To remove manufacturers from the ambit of § 5–108(a) . . . would be flatly inconsistent with this language's plain mandate." *Id.* at 865.

A similar conclusion was reached by the District of Columbia's highest court in construing that jurisdiction's similarly worded statute of repose. In *J.H. Westerman Co. v. Fireman's Fund Ins. Co.*, 499 A.2d 116 (D.C.1985), the question before the D.C.Court of Appeals was whether a manufacturer of a component of a heating system could claim the protection of D.C.'s statute of repose, D.C.Code Ann. § 12–310. *Id.* at 117. At that time, the D.C. statute provided that actions "to recover damages . . . resulting from the defective or unsafe condition of an improvement to real property . . . shall be barred" unless the plaintiff's injury occurred within 10 years of the date the improvement was substantially completed. *Id.*

at 118 n. 1.[14]  The D.C. Court of Appeals held that the statute plainly applied to suits against all persons, other than those expressly excluded, and thereby barred a claim brought against a product manufacturer.  *Id.* at 121.[15]

We agree with both the reasoning and holdings of *First United Methodist Church* and *J.H. Westerman Co.*  In our review of the legislative history of § 5–108, we have uncovered nothing which supports Rose's assertion that the General Assembly intended that product manufacturers would not be entitled to the protections of the statute of repose.  The General Assembly expressly identified certain defendants to which subsection (a) does not apply.  If the Legislature intended to exclude all manufacturers of consumer products, it certainly could have so provided.  We therefore conclude that manufacturers of products other than those containing asbestos are among the persons entitled to the protections of § 5–108(a).

---

**14.**  At the time *J.H. Westerman Co. v. Fireman's Fund Ins. Co.*, 499 A.2d 116 (D.C.1985) was decided, D.C.Code Ann. § 12–310 provided, in relevant part:

> **Actions arising out of death or injury caused by defective or unsafe improvements to real property.**
> (a)(1) Except as provided in subsection (b), any action—
>   (A) to recover damages for—
>   (i) personal injury,
>   (ii) injury to real or personal property, or
>   (iii) wrongful death,
> resulting from the defective or unsafe condition of an improvement to real property, and
>   (B) for contribution or indemnity which is brought as a result of such injury or death, shall be barred unless in the case where injury is the basis of such action, such injury occurs within the ten-year period beginning on the date the improvement was substantially completed, or in the case where death is the basis of such action, either such death or injury resulting in such death occurs within such ten-year period.

In subsection (b) of the statute, owners and those in actual control of the property were excluded from subsection (a).  499 A.2d at 118 n. 1.

**15.**  Less than 2 years later, the District of Columbia statute was amended to make "the statute inapplicable to any manufacturer or supplier of any equipment or machinery or other articles installed in the structure upon real property." *Wesley Theological Seminary*, 876 F.2d at 120.

## III.

█ We must next determine whether Rose's injuries resulted "from the defective and unsafe condition of an improvement to real property." Although a swimming pool, at the time that it is sold, might fall within the broad definition of "consumer goods" as it appears in Maryland Code (1975, 1992 Repl.Vol.), § 2–105(1) and § 9–109(1) of the Commercial Law Article,[16] *see Anthony Pools v. Sheehan,* 295 Md. 285, 289–94, 455 A.2d 434, 436–39 (1983) (pool diving board is consumer good); *cf. Chlan v. KDI Sylvan Pools, Inc.,* 53 Md.App. 236, 240–41, 452 A.2d 1259, 1261–62 (1982), we do not find the classification of a product as a consumer good either helpful or dispositive with respect to the question of whether the product may also be considered an "improvement to real property" within the meaning of § 5–108(a).

█ Section 5–108 itself does not define "improvement to real property" and there is no clear indication in the legislative history of the statute as to what the term was meant to encompass. In *Allentown Plaza v. Suburban Propane,* 43 Md.App. 337, 405 A.2d 326 (1979), the Court of Special Appeals noted that two general approaches have been espoused by courts around the country in determining what constitutes an "improvement to real property" for the purposes of statutes of repose. *Id.* at 344, 405 A.2d at 331. A small minority of courts rely upon common law fixture analysis and the relevant considerations of the degree of annexation and the physical size of the object to determine whether a particular object qualifies as an "improvement to real property. *Id.* at 345, 405 A.2d at 331. The overwhelming majority of courts, however, have eschewed fixture analysis and avoid its vagaries

---

**16.** Section 2–105(1) of the Commercial Law Article defines "goods" as "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Title 8) and things in action." Section 9–109(1) of the same article provides, in pertinent part, that "Goods are (1) "Consumer goods: if they are used or bought for use primarily for personal, family, or household purposes."

by employing a "common sense" or "common usage" test. *Id.* Under the common sense approach, the relevant inquiry is whether the object is an improvement within the common, dictionary meaning of that term. *Id.*

As a basic tenet of statutory construction, the term "improvement to real property" should be construed according to its common-sense, ordinary meaning in the absence of evidence that the Legislature intended for another meaning to apply. *See, e.g., Jameson,* 332 Md. at 732–33, 633 A.2d at 97–98. In the legislative history of § 5–108, there is no reference to the term "fixture" nor any indication that the Legislature meant for fixture law to be determinative of what constitutes an "improvement." In *Allentown Plaza,* the Court of Special Appeals suggested that the term "improvement" may be commonly understood as including "everything that permanently enhances the value of premises for general uses." 43 Md.App. at 345, 405 A.2d at 331 (*quoting* 41 Am.Jur.2d *Improvements* § 1, at 479 (1968)). We find persuasive the narrower definition of "improvement" found in *Black's Law Dictionary,* which several courts have relied upon in construing the term:

> [a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset. Such expenditures are capitalized as part of the asset's cost.

*Black's Law Dictionary* (6th ed. 1990), at 757; *see Fleck v. KDI Sylvan Pools, Inc.,* 981 F.2d 107, 114 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1645, 123 L.Ed.2d 267 (1993); *McCormick v. Columbus Conveyer Co.,* 564 A.2d at 909.

██  We agree, however, with the *Allentown Plaza* court that the nature of the addition or betterment, its permanence

and relationship to the land and its occupants, and its effect on the value and use of the property are factors which common sense dictates should be considered in making the case by case determination of whether it is an "improvement to real property" within the meaning of § 5–108. *Allentown Plaza,* 43 Md.App. at 346, 405 A.2d at 332. The Schannes' pool is a permanent addition, excavated and built into the real property, which enhances the value of the entire premises. Considering those factors, we conclude that the Schannes' swimming pool is an "improvement to real property" within the meaning of § 5–108. *See also Fleck v. Sylvan Pools,* 981 F.2d at 115; *Kline v. Doughboy Rec. Mfg. Co.,* 495 N.W.2d 435, 438 (Minn. Ct.App.1993); *Nevada Lakeshore Co. v. Diamond Elec., Inc.,* 89 Nev. 293, 511 P.2d 113 (1973); *Morse v. City of Toppenish,* 46 Wash.App. 60, 729 P.2d 638, 640 (1986), *review denied,* 108 Wash.2d 1007 (1987).

## IV.

In his brief, Rose also asserts that his injuries did not result from the defective nature of the pool but rather resulted from Fox's failure to adequately warn its customers of the pool's defective and unsafe design, and that, therefore, § 5–108(a) is not applicable to his claims. We do not agree.

Rose's injuries were suffered as a result of a diving accident in the Schannes' pool. In his complaint, the defective nature of the pool is identified as the *cause* of his injuries.[17] Indeed, as an essential element of each of his causes of action, Rose would have had to prove that his injuries were *caused* by the defective and unsafe condition of the pool. *See, e.g., Eaton*

---

**17.** Rose's complaint specifically alleges that Fox negligently "designed and placed into the stream of commerce an improperly designed swimming pool which was unsafe for diving" and subsequently failed to warn its customers of defects in the pool's design. Rose's strict liability count against Fox likewise is based upon the allegation that Fox sold "a defective pool which was unreasonably dangerous." Finally, Rose's breach of warranty claim rests upon the allegation that there existed "defects in the said swimming pool and its design, material, manufacture, and installation."

*Corp. v. Wright,* 281 Md. 80, 375 A.2d 1122 (1977); *Phipps v. General Motors Corp.,* 278 Md. 337, 363 A.2d 955 (1976); *Moran v. Faberge,* 273 Md. 538, 332 A.2d 11 (1975); *Jensen v. American Motors Corp.,* 50 Md.App. 226, 437 A.2d 242 (1981). We therefore reject Rose's argument that his injuries did not result from or originate from the defective and unsafe condition of the swimming pool as the direct cause of his injuries was the alleged defective and unsafe condition of the pool. *Cf. Cannon v. McKen,* 296 Md. 27, 34, 459 A.2d 196, 200 (1983) (all claims originating from rendering of health care are claims "arising or resulting from" rendering of health care within meaning of Health Care Malpractice Claims Act).

## V.

Finally, we address the question of whether, at the time of Rose's injury on July 4, 1991, 20 years had passed since the "entire improvement first bec[ame] available for its intended use." Under § 5–108(a), construction or installation of the entire improvement need not be totally completed for the entire improvement to be considered "first . . . available for its intended use." Rather, the phrase "first . . . available for its intended use" means the entire improvement must only be substantially completed or completed to such a degree that it is capable of being used in its intended manner. *See* Article 57, § 20, *supra* (improvement is "substantially completed" when it is "first available for its intended use.")

In granting summary judgment in favor of Fox, the trial court found that there was no genuine dispute that the "entire improvement first bec[ame] available for its intended use" prior to July 4, 1971—20 years prior to Rose's injury on July 4, 1991—and that Fox consequently was entitled to judgment as a matter of law. The evidence which was before the trial judge when he was making that determination consisted of the warranty card and the deposition testimony of both Rudi and Hannelore Schanne.

In Rudi Schanne's deposition, the following statements were made:

[Question]: Prior to the date of this incident, you had a pool installed?

[Mr. Schanne]: Yes.

[Question]: When had you got that pool installed?

[Mr. Schanne]: The pool got installed in 1971.

[Question]: When in 1971?

[Mr. Schanne]: It was early in the spring. I don't even know to tell you the date, but I would say somewhere around March of '71.

Hannelore Schanne provided the following testimony in her deposition:

[Question]: Were they finished [with construction of the pool] by the end of April? Were they finished with it, or did it go into May?

[Mrs. Schanne]: I think it was the beginning of May really. It took them a long time.

[Question]: So by the end of May they were finished with everything they had to do on the pool?

[Mrs. Schanne]: Correct.

[Question]: When did you start swimming in the pool? May or June?

[Mrs. Schanne]: Let's see. Because my sister-in-law said I'm crazy, it was then end of May. The water was very cold.

Mrs. Schanne also testified in her deposition that she was given the warranty card for the pool on the day that construction was completed. The warranty card was dated July 12, 1971.

The trial judge relied primarily upon Mrs. Schanne's statement that she was swimming in the pool in May 1971 in concluding that the entire improvement first became available for its intended use by May 1971. We find, however, that the testimony that a warranty card was presented to Mrs. Schanne on the day that construction was completed and the fact that the warranty card was dated July 12, 1971 raises the inference that installation of the pool may not have actually

been "substantially completed" until after July 4, 1971. Since all inferences from the evidence must be drawn in favor of Rose, the party opposing summary judgment, we find that the evidence presented to the trial court raised an genuine issue as to when the entire improvement was "first . . . available for its intended use." Accordingly, we hold that the trial court erred in granting summary judgment in favor of Fox. *See* Maryland Rule 2–501; *Foy v. Prudential Ins. Co.*, 316 Md. 418, 422, 559 A.2d 371, 373 (1989).

We conclude that the trial court was correct in determining that § 5–108(a) of the statute of repose applies to the instant cause of action. We find, however, that the trial court erred in its determination that there was no genuine issue of material fact with respect to whether the 20–year period required by § 5–108(a) had passed prior to the time of Rose's injury. Accordingly, we reverse the judgment of the Circuit Court and remand this case for further proceedings consistent with this opinion.

*JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO ABIDE THE FINAL RESULT.*

ELDRIDGE and BELL, JJ., concur in the result only.