**Frederick A. LEWIS, Plaintiff,**

v.

**WELDOTRON CORPORATION, et al., Defendants.**

**Civil Action No. JFM–98–1466.**

United States District Court, D. Maryland.

Aug. 23, 1999.

**436**

John R. Sutherland, Kristen A. Brinster, Sutherland & Brinster, Baltimore, MD, for plaintiff.

William N. Zifchak, Sasscer, Clagett & Bucher, Upper Marlboro, MD, Michael T. Wharton, Wharton, Levin, Ehrmantraut, Klein & Nash, Annapolis, MD, for defendants.

## MEMORANDUM

MOTZ, Chief Judge.

Plaintiff, Frederick A. Lewis, has sued defendants, Weldotron Corporation ("Weldotron") and Kaiser Aluminum & Chemical ("Kaiser"), alleging strict liability in tort, breach of warranty, and negligence. Defendants have filed motions for summary judgment, which will be granted.

### I.

On May 11, 1995, plaintiff, Frederick Lewis was injured while working at a shrink wrap machine at the Mount Savage Firebrick Company ("Mount Savage"). The machine and its associated conveyors (collectively "the system") were designed and manufactured by Weldotron. Kaiser purchased the machine and conveyors from Weldotron in 1969, and both defendants installed the system at Kaiser's brick manufacturing plant. Kaiser used the system from June 24, 1969 until Kaiser shut down the plant in August 1980. Mount Savage purchased the plant, along with all of its equipment, on May 22, 1986. The system has operated continuously from that date until the present.

Before the system was constructed, pallets of bricks were wrapped manually. Kaiser implemented the automated system to reduce costs and increase output. Kaiser treated the system as a capital improvement. The system took several weeks for Kaiser and Weldotron to assemble (although there is evidence that it could have been installed in considerably less time had there not been problems with the system as delivered). The two conveyor belts, the oven assembly, and the component motors were bolted to the concrete floor of the plant. Stabilizing angle irons were welded to the conveyor and bolted to the floor, and steel guards were mounted in the floor to protect the drive motors from being struck by forklift trucks. The oven control panel was hard wired into the plant's electrical system, and attached pipes delivered natural gas necessary to operate the machine. The system would take one person three days to remove from its location; two people could remove it in approximately a day and a half. If it were removed, there would be numerous holes left in the concrete floor from the bolts, and the three-inch diameter gas lines would need to be capped off where they had been connected to the system.

### II.

Defendants argue that Lewis's claim is barred by Maryland's statute of repose, Md.Code Ann., Cts. & Jud. Proc. § 5–108(a). The relevant section provides as follows:

(a) Injury occurring more than 20 years later.—Except as provided by this section, no cause of action for damages accrues and a person may not seek contribution or indemnity for damages incurred when wrongful death, personal injury, or injury to real or personal property resulting from the defective and unsafe condition of an improvement to real property occurs more than 20 years after the date the entire improvement first becomes available for its intended use.

Md.Code Ann., Cts. & Jud. Proc. § 5–108. The parties agree that more than twenty years passed between the date the system became available (1969) and the date of the injury (1995). The issue is therefore whether the system constitutes an "improvement to real property."

"Section 5–108 itself does not define 'improvement to real property,' and there is no clear indication in the legislative history as to what the term was meant to encompass." *Rose v. Fox Pool Corp.*, 335 Md. 351, 643 A.2d 906, 918 (1994). The statute was first construed by Maryland courts in *Allentown Plaza Associates v. Suburban Propane Gas Corp.*, 43 Md.App. 337, 405 A.2d 326 (1979). The Court of Special Appeals held that the statute of repose did not apply to gas meters and their couplings. In so ruling, that court used both a fixture analysis and a "common-sense" approach. The court noted that the meters were never intended to be permanent, and that they were intended to be removed when natural gas became available. The contract between the parties stated that the gas meters remained "personalty, regardless of how attached to realty" and the sole property of the supplier. The court further noted that the meters did not enhance the value of the property, nor did they pass with the land when it was sold.

■ Fifteen years later, in *Rose v. Fox Pool Corp.*, the Maryland Court of Appeals adopted the "common sense" or "common usage" test, which is used by a majority of states with similar statutes of repose. 643 A.2d at 918. The court should construe the term according to its "common-sense, ordinary meaning." *Id.* The Court of Appeals adopted the Black's Law Dictionary definition of "improvement":

A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development, such as a street, sidewalks, sewers, utilities, etc. An expenditure to extend the useful life of an asset or to improve its performance over that of the original asset. Such expenditures are capitalized as part of the asset's cost.

*Id.* (quoting *Black's Law Dictionary* 757 (6th ed.1990)). The court also stressed that the following factors should be considered: "the nature of the addition or betterment, its permanence and relationship to the land and its occupants, and its effect on the value and use of the property." *Id.* After extensively describing the common-sense approach, the *Rose* court applied it in one sentence and held that a pre-fabricated residential in-ground swimming pool was an improvement to property because it was "a permanent addition, excavated and built into the real property, which enhances the value of the entire premises." In *Rose*, the Court of Appeals did not suggest that the result in *Allentown Plaza* was wrong. However, it rejected a fixture analysis.

Plaintiff cites four cases from other jurisdictions to support his contention that the system was not an improvement to real property. The first two cases involve statutes which protect only certain classes of people. In *Ritter v. Abbey–Etna Machine Co.*, 483 N.W.2d 91 (1992), the court held that a steel tube mill was not an improvement to real property under the

Minnesota statute of repose. Critical to the holding was the language of the Minnesota statute that specifies that "no action ... shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property." *Id.* at 92–93 (quoting Minn.Stat. § 541.051 (1986)). The court found that this class of persons does not include "manufacturers of production machinery."[1] The Supreme Court of Washington construed that state's similar statute of repose as not protecting "manufacturers of heavy equipment or nonintegral systems within the building." *Condit v. Lewis Refrigeration Co.,* 101 Wash.2d 106, 676 P.2d 466, 468 (1984) (en banc).

In contrast, in *Rose,* the Maryland Court of Appeals held that "manufacturers of products other than those containing asbestos are among the persons entitled to the protections of § 5–108(a)." 643 A.2d at 917. The Court of Appeals specifically noted that Maryland's § 5–108(a) differs from the model statute adopted by most states (including Minnesota and Washington) in that it does not list which persons it protects. *Id.* (citing, among other cases, *Condit* ). Thus, neither *Ritter* nor *Condit* is applicable to Maryland law.

The other two cases upon which plaintiff relies are likewise distinguishable on the ground they set criteria different from those established in Rose for determining what is an improvement. In *Beals v. Superior Welding Co.,* 273 Ill.App.3d 655, 210 Ill.Dec. 525, 653 N.E.2d 430, 435 (1995), the court ruled that an improvement "may not have an identity separate from the overall system or building in which it is located." New Jersey uses the fixture analysis explicitly rejected in *Rose. See Ilich v. John E. Smith Sons Co.,* 145 N.J.Super. 415, 367 A.2d 1216, 1218 (1976).

Defendants cite numerous cases from other jurisdictions which held that similar types of large equipment were improvements to real property. *See, e.g., Adair v. The Koppers Co.,* 741 F.2d 111, 115–16 (6th Cir.1984) (under Ohio law, coal handling conveyor was an improvement, despite the fact that it could be removed relatively easily, because it remained in place since its construction and added value to the factory); *O'Dell v. Lamb–Grays Harbor Co.,* 911 F.Supp. 490, 493–94 (W.D.Okla. 1995) (slat conveyor was an improvement—even though it had been treated as personalty for tax purposes—because it had been bolted and welded to the floor and was designed to be a permanent part of a paper mill); *Anderson v. The M.W. Kellogg Co.,* 766 P.2d 637, 641 (Colo.1988) (en banc) (large conveyor belt used to transfer rock material at a brick manufacturing plant was an improvement to real property because of its sheer size and its importance to the functioning of the enterprise); *Pacific Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 554 (Minn. 1977) (furnace connected to various cables, pipes, and ducts was an improvement to real property, even though it could be removed easily, because it enhanced the value of real property and involved the expenditure of labor or money).

Lewis argues that, the cases cited by defendants notwithstanding, the shrink wrap system is not an improvement to real property under *Rose.* Three of plaintiff's contentions are essentially the same: the system could have been removed, relocated within the building, or sold to someone outside the facility. Although he denies it, Lewis seems to be arguing that the system is not a fixture—an argument he is precluded from making under *Rose.* In any event, the possibility that the system could be removed or sold does not change the

---

1. The Minnesota legislature amended the statute of repose in 1990 to expressly exclude manufacturers or suppliers of any "equipment or machinery installed upon real property" from the ambit of Minn Stat. § 541.051.

See *Ritter,* 483 N.W.2d at 93 n. 2 (citing 1990 Minn. Laws ch. 555, § 13). Because the amendment occurred after Ritter's accident, it was not controlling in that case.

fact that it has not been moved for thirty years, and that it remained in place during periods when the facility was dormant, sold, and reopened. Even when the facility itself was sold, the system remained in its place and was purchased by the new owner.

Plaintiff's primary contention is that when Kaiser sold the facility to Mount Savage, it transferred the system under the paragraph that conveyed "all machinery and all other personal property" (not the paragraph that conveyed the "land and any buildings and improvements thereon erected"). The sale documents themselves do not indicate under which category the system was transferred, but Kaiser indicated in its answer to plaintiff's interrogatory number 14 that the "particular terms [of sale] are reflected in a Bill of Sale dated October 9, 1986." Exh. 1 to Kaiser's Mot. for Summ. J. The referenced Bill of Sale transfers "all the machinery and equipment owned by Seller and located [at the brick factory]." Exh. 14 to Kaiser's Mot. for Summ. J. The classification of the system by the parties as "machinery and equipment" may be considered by the Court in deciding whether it is an improvement to real property. However, it is not the only factor to be considered.[2]

▉ Examining all of the *Rose* factors, I am convinced that the system is an improvement to real property within the meaning of § 5–108(a).[3] First, the "nature of the addition" weighs in favor of defendants in light of the size of the system (a 74 foot long, 4 foot wide steel structure). Its "permanence" cannot be denied, as it is undisputed that Kaiser intended system to be a permanent addition to the facility, and the new owner has kept it intact. The system is certainly valuable, and it amounts to more than repair or replacement of parts of the existing building. Its presence also enhances the utility of the building, because the entire purpose of the building was the manufacture of bricks. After considerable analysis, Kaiser determined that having a system to shrink wrap the bricks would make the brick manufacturing process. more efficient. The expense of the system was capitalized. Finally, the system is closely attached to the real property by bolts, angle bracing, and stabilizing legs.

Moreover, the Maryland courts and legislature have given no indication that they desire to exclude manufacturers of heavy permanent machinery and equipment from the protection of § 5–108(a). If the Maryland legislature wanted to do so, it would have (1) enacted the model statute mentioning specific classes to be included, (2) specifically excluded manufacturers of equipment, or (3) reacted to *Rose*, which seems to expand the scope of Maryland's statute of repose father than other states' courts have.[4]

2. Other courts have rejected arguments that the parties' classification determines whether the property at question is an improvement to real property. *See, e.g., Stone v. United Engineering*, 197 W.Va. 347, 475 S.E.2d 439, 448 (1996) (defendant's admission that the item was personal property did not determine whether it was an improvement to real property, because that is a question of law for the court); *cf. Adair v. Koppers Co., Inc.*, 741 F.2d 111, 114 (6th Cir.1984) (testimony of plaintiff's expert that the item was not an improvement to real property was irrelevant, because only a court can make that determination as a matter of law).

3. This conclusion makes it unnecessary to address Kaiser's argument that, as a former plant owner, it owes no duty to the employee of a subsequent purchaser.

4. Almost as an afterthought, Lewis argues that the statute of repose violates the Maryland Declaration of Rights and the United States Constitution. He has devoted less than a page of his opposition memorandum to this theory and has failed to provide a single cite to case law or either constitution. In *Whiting–Turner Contracting Co. v. Coupard*, 304 Md. 340, 499 A.2d 178 (1985), the Maryland Court of Appeals held that § 5–108(b) was constitutional. That subsection provides that a shorter statute of repose (10 years) applies to architects and professional engineers. Examining § 5–108(b) under a rational basis standard, the Court of Appeals concluded that singling out architects and professional engineers did not violate equal protection. The court further held that a ten-year limitation did not violate due process of law. It is clear

For the foregoing reasons, defendants' motions for summary judgment are granted. A separate order effecting these rulings is attached hereto.

## ORDER

For the reasons stated in the memorandum entered herewith, it is, this 23rd day of August, 1999

ORDERED that

1. Defendant Weldotron Corporation's motion for summary judgment is granted;

2. Defendant Kaiser Aluminum & Chemical's motion for summary judgment is granted; and

3. Judgment is entered-in favor of defendants against plaintiff.

that the subsection at issue here, § 5–108(a), is, if anything, more able to withstand a constitutional challenge than § 5–108(b), because it does not single out any class for protection, and the period of limitation is twice as long. Nor would this subsection violate Lewis's right to trial by jury, as he suggests. *See, e.g., Franklin v. Mazda Motor Corp.*, 704 F.Supp. 1325, 1331 (D.Md.1989) (legislature has the power to define, augment, or abolish complete causes of action).